**CIRCUIT CITY STORES, INC.**
**a Virginia corporation,**
**Plaintiff–Appellee,**

v.

**Saint Clair ADAMS, a California**
**resident, Defendant–**
**Appellant.**

No. 98–15992.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 26, 2001.

Filed Feb. 4, 2002.

Rex Darrell Berry, Davis, Grimm & Payne, Seattle, Washington, for the plaintiff-appellee.

Angela Alioto, Steven L. Robinson, The Law Offices of Mayor Joseph L. Alioto and Angela Alioto, San Francisco, CA, for the defendant-appellant.

Before: B. FLETCHER, D.W. NELSON, and BRUNETTI, Circuit Judges.

## OPINION

D.W. NELSON, Circuit Judge:

The Supreme Court granted certiorari, reversed this court's prior decision, and remanded for proceedings in accordance with its opinion in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Now that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies to the arbitration agreement in this case, we must decide whether the district court erred in exercising its au-

thority under the Act to compel arbitration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 23, 1995, Saint Clair Adams completed an application to work as a sales person at Circuit City. As part of the application, Adams signed the "Circuit City Dispute Resolution Agreement" ("DRA"). The DRA requires employees to submit all claims and disputes to binding arbitration.[1] Incorporated into the DRA are a set of "Dispute Resolution Rules and Procedures" ("dispute resolution rules" or "rules") that define the claims subject to arbitration, discovery rules, allocation of fees, and available remedies. Under these rules, the amount of damages is restricted: back pay is limited to one year, front pay to two years, and punitive damages to the greater of the amount of front and back pay awarded or $5000. In addition, the employee is required to split the costs of the arbitration, including the daily fees of the arbitrator, the cost of a reporter to transcribe the proceedings, and the expense of renting the room in which the arbitration is held, unless the employee prevails and the arbitrator decides to order Circuit City to pay the employee's share of the costs. Notably, Circuit City is not required under the agreement to arbitrate any claims against the employee.

An employee cannot work at Circuit City without signing the DRA. If an applicant refuses to sign the DRA (or with-

---

1. The DRA specifies that job applicants agree to settle "all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, *exclusively* by final and binding *arbitration* before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments to the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and law of tort." (emphasis in original).

draws consent within three days), Circuit City will not even consider his application.

In November 1997, Adams filed a state court lawsuit against Circuit City and three co-workers alleging sexual harassment, retaliation, constructive discharge, and intentional infliction of emotional distress under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900 *et seq.*, and discrimination based on sexual orientation under Cal. Labor Code § 1102.1. Adams sought compensatory, punitive, and emotional distress damages for alleged repeated harassment during his entire term of employment.

Circuit City responded by filing a petition in federal district court for the Northern District of California to stay the state court proceedings and compel arbitration pursuant to the DRA. On April 29, 1998, the district court granted the petition. On appeal, we reversed on the ground that Section 1 of the FAA exempted Adams' employment contract from the FAA's coverage. *Circuit City Stores, Inc. v. Adams,* 194 F.3d 1070 (9th Cir.1999). The Supreme Court reversed our decision and remanded.

## II. DISCUSSION

Circuit City has devised an arbitration agreement that functions as a thumb on Circuit City's side of the scale should an employment dispute ever arise between the company and one of its employees. We conclude that such an arrangement is unconscionable under California law.[2]

### A. Applicable Law

The FAA was enacted to overcome courts' reluctance to enforce arbitration agreements. *See Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 270, 115 S.Ct.

834, 130 L.Ed.2d 753 (1995). The Act not only placed arbitration agreements on equal footing with other contracts, but established a federal policy in favor of arbitration, *see Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984), and a federal common law of arbitrability which preempts state law disfavoring arbitration. *See Allied–Bruce,* 513 U.S. at 281, 115 S.Ct. 834; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, *save upon such grounds that exist at law or in equity for the revocation of any contract.*" 9 U.S.C. § 2 (emphasis added). In determining the validity of an agreement to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Thus, although "courts may not invalidate arbitration agreements under state laws applicable *only* to arbitration provisions," general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996).

Adams argues that the DRA is an unconscionable contract of adhesion. Because Adams was employed in California, we look to California contract law to determine whether the agreement is valid. *See Ticknor v. Choice Hotels Int'l, Inc.,* 265 F.3d 931 (9th Cir.2001) (applying Montana law to decide whether arbitration clause was valid).

---

**2.** We review the district court's order compelling arbitration *de novo. Quackenbush v. All-* *state Ins. Co.,* 121 F.3d 1372, 1380 (9th Cir. 1997).

■ Under California law, a contract is unenforceable if it is both procedurally and substantively unconscionable. *Armendariz v. Found. Health Psychcare Svcs., Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000). When assessing procedural unconscionability, we consider the equilibrium of bargaining power between the parties and the extent to which the contract clearly discloses its terms. *Stirlen v. Supercuts, Inc.*, 51 Cal. App.4th 1519, 60 Cal.Rptr.2d 138, 145 (1997). A determination of substantive unconscionability, on the other hand, involves whether the terms of the contract are unduly harsh or oppressive. *Id.*

## B. The DRA and Unconscionability

■ The DRA is procedurally unconscionable because it is a contract of adhesion: a standard-form contract, drafted by the party with superior bargaining power, which relegates to the other party the option of either adhering to its terms without modification or rejecting the contract entirely. *Id.* at 145–46 (indicating that a contract of adhesion is procedurally unconscionable). Circuit City, which possesses considerably more bargaining power than nearly all of its employees or applicants, drafted the contract and uses it as its standard arbitration agreement for all of its new employees. The agreement is a prerequisite to employment, and job applicants are not permitted to modify the agreement's terms—they must take the contract or leave it. *See Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 690 (noting that few applicants are in a position to refuse a job because of an arbitration agreement).

The California Supreme Court's recent decision in *Armendariz* counsels in favor of finding that the Circuit City arbitration agreement is substantively unconscionable as well. In *Armendariz*, the California court reversed an order compelling arbitration of a FEHA discrimination claim because the arbitration agreement at issue required arbitration only of employees' claims and excluded damages that would otherwise be available under the FEHA. *Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 694. The agreement in *Armendariz* required employees, as a condition of employment, to submit all claims relating to termination of that employment—including any claim that the termination violated the employee's rights—to binding arbitration. *Id.* at 675. The employer, however, was free to bring suit in court or arbitrate any dispute with its employees. In analyzing this asymmetrical arrangement, the court concluded that in order for a mandatory arbitration agreement to be valid, some "modicum of bilaterality" is required. *Id.* at 692. Since the employer was not bound to arbitrate its claims and there was no apparent justification for the lack of mutual obligations, the court reasoned that arbitration appeared to be functioning "less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." *Id.*

The substantive one-sidedness of the *Armendariz* agreement was compounded by the fact that it did not allow full recovery of damages for which the employees would be eligible under the FEHA. *Id.* at 694. The exclusive remedy was back pay from the date of discharge until the date of the arbitration award, whereas plaintiffs in FEHA suits would be entitled to punitive damages, injunctive relief, front pay, emotional distress damages, and attorneys' fees.

■ We find the arbitration agreement at issue here virtually indistinguishable from the agreement the California Supreme Court found unconscionable in *Armendariz*. Like the agreement in *Armendariz*, the DRA unilaterally forces employees to arbitrate claims against the

employer. The claims subject to arbitration under the DRA include "any and all employment-related legal disputes, controversies or claims *of an Associate* arising out of, or relating to, an Associate's application or candidacy for employment, employment or cessation of employment with Circuit City." (emphasis added). The provision does not require Circuit City to arbitrate its claims against employees. Circuit City has offered no justification for this asymmetry, nor is there any indication that "business realities" warrant the one-sided obligation. This unjustified one-sidedness deprives the DRA of the "modicum of bilaterality" that the California Supreme Court requires for contracts to be enforceable under California law.

And again as in *Armendariz*, the asymmetry is compounded by the fact that the agreement limits the relief available to employees. Under the DRA, the remedies are limited to injunctive relief, up to one year of back pay and up to two years of front pay, compensatory damages, and punitive damages in an amount up to the greater of the amount of back pay and front pay awarded or $5,000.[3] By contrast, a plaintiff in a civil suit for sexual harassment under the FEHA is eligible for all forms of relief that are generally available to civil litigants—including appropriate punitive damages and damages for emotional distress. *See Commodore Home Sys., Inc. v. Superior Court of San Bernardino County*, 32 Cal.3d 211, 185 Cal.Rptr. 270, 649 P.2d 912, 914 (1982). The DRA also requires the employee to split the arbitrator's fees with Circuit City.[4] This fee allocation scheme alone would render an arbitration agreement unenforceable.[5] *Cf. Cole v. Burns Intern. Security Svcs.*, 105 F.3d 1465 (D.C.Cir. 1997) (holding that it is unlawful to require an employee, through a mandatory arbitration agreement, to share the costs of arbitration). But the DRA goes even further: it also imposes a strict one year statute of limitations on arbitrating claims that would deprive Adams of the benefit of the continuing violation doctrine available in FEHA suits. *See, e.g., Richards v. CH2M Hill, Inc.*, 26 Cal.4th 798, 111 Cal. Rptr.2d 87, 29 P.3d 175, 176 (2001). In short, and just like the agreement invalidated by the California Supreme Court in

**3.** Circuit City argues that under *Johnson v. Circuit City Stores*, 203 F.3d 821 (4th Cir. 2000), the DRA's limitations on damages have been modified by operation of law. It is true that the dispute resolution rules provide that where any of the rules is held to be in conflict with a provision of law, the conflicting rule is automatically modified to comply with the new law. But the automatic modification provision applies "only in the jurisdiction in which it is in conflict with a mandatory provision of law." In all other jurisdictions, the rules "apply in full force and effect."

**4.** Circuit City argues that the current version of the dispute resolution rules does not require employees to split the costs of arbitration. However, the version of the rules in effect at the time the claim arose, not the version in effect today, applies. *See* Dispute Resolution Rules and Procedures, Rule 19 ("[A]ll claims arising before alteration or termination [of the DRA and the dispute resolution rules] shall be subject to the Agreement and corresponding Dispute Resolution Rules and Procedures in effect at the time the claim arose.").

**5.** A side note: whereas the arbitration agreements in *Cole* and *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), were silent as to the allocation of fees, the DRA explicitly divides the costs of arbitration equally between employer and employee. While the DRA contains provisions which potentially limit the employee's liability for fees, the default rule is that employees will share equally in the cost of arbitration. As a result, we cannot interpret the agreement to prohibit sharing costs, as the court did in *Cole*, 105 F.3d at 1485, or find the issue of fees too speculative, as in *Green Tree*, 121 S.Ct. at 522.

*Armendariz,* the DRA forces Adams to arbitrate his statutory claims without affording him the benefit of the full range of statutory remedies.

In addition, our decision is entirely consistent with federal law concerning the enforceability of arbitration agreements. The Supreme Court, in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991), held that "[b]y agreeing to arbitrate a statutory claim, [an employee] does not forgo the substantive rights afforded by the statute;[he] only submits to their resolution in an arbitral, rather than a judicial forum." While the Court in *Gilmer* affirmed that statutory rights can be resolved through arbitration, the decision also recognized that the arbitral forum must allow the employee to adequately pursue statutory rights. *Id.* at 28., 111 S.Ct. 1647

Courts have since interpreted *Gilmer* to require basic procedural and remedial protections so that claimants can effectively pursue their statutory rights. *See, e.g., Cole,* 105 F.3d at 1482 (listing five basic requirements that an arbitral forum must meet). We note that here, Circuit City's arbitration agreement fails to meet two of *Cole*'s minimum requirements: it fails to provide for all of the types of relief that would otherwise be available in court, or to ensure that employees do not have to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum. *Id.*

■ Nor does our decision run afoul of the FAA by imposing a heightened burden on arbitration agreements. Because unconscionability is a defense to contracts generally and does not single out arbitration agreements for special scrutiny, it is also a valid reason not to enforce an arbitration agreement under the FAA. Indeed, the Supreme Court has specifically mentioned unconscionability as a "generally

applicable contract defense[ ]" that may be raised consistent with § 2 of the FAA. *Doctor's Assocs.,* 517 U.S. at 687, 116 S.Ct. 1652.

Our conclusion here is further buttressed by this Circuit's recent opinion in *Ticknor.* The majority in *Ticknor* looked to Montana law and found an asymmetrical arbitration clause (similar to the one at issue here) unconscionable and unenforceable. *Ticknor,* 265 F.3d at 942. The majority was careful to explain that the FAA did not stand as a bar to the court's holding because the FAA does not preempt state law governing the unconscionability of adhesion contracts. *Id.* at 935; *see also id.* at 941 (overruling, so far as they are inconsistent with that conclusion, *Cohen v. Wedbush, Noble, Cooke, Inc.,* 841 F.2d 282, 286 (9th Cir.1988), and *Bayma v. Smith Barney, Harris Upham & Co.,* 784 F.2d 1023 (9th Cir.1986)). We follow *Ticknor* in concluding that the result we reach today is fully consistent with the FAA.

*C. Severability*

■ Under California law, courts have discretion to sever an unconscionable provision or refuse to enforce the contract in its entirety. *See* Cal. Civ.Code § 1670.5(a). In deciding whether to invalidate the contract,

> [c]ourts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.

*Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 696.

In this case, as in *Armendariz*, the objectionable provisions pervade the entire contract. In addition to the damages limitation and the fee-sharing scheme, the unilateral aspect of the DRA runs throughout the agreement and defines the scope of the matters that are covered. Removing these provisions would go beyond mere excision to rewriting the contract, which is not the proper role of this Court. *See id.* at 125, 99 Cal.Rptr.2d 745, 6 P.3d 669. Therefore, we find the entire arbitration agreement unenforceable.

### III. CONCLUSION

Because we find that the DRA is an unconscionable contract of adhesion under California law, the order compelling arbitration is **REVERSED.**