Tonya COOPER, Plaintiff,

v.

**MRM INVESTMENT COMPANY, Terry Rodgers and Larry Mays, Defendants.**

No. 3:01–1596.

United States District Court, M.D. Tennessee, Nashville Division.

April 29, 2002.

---

William B. Ryan, Donati Law Firm, Memphis, TN, (C. Mark Donahoe, Byrd Donahoe & Donahoe, PLLC, Jackson, Jackson, TN, of counsel), for Plaintiff.

Regina A. Jackon, Kurt W. Maier, English, Lucas, Priest & Owsley, Bowling Green, KY, for Defendants.

## MEMORANDUM ORDER

JOHN T. NIXON, Senior District Judge.

Pending before the Court is Defendants' Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Proceedings (Doc. No. 12). Plaintiff has now responded to this Motion (Doc. No. 16). The Court heard oral arguments in this matter on April 8, 2002. For the reasons discussed below, Defendants' Motion will be denied.

## I. BACKGROUND

This case arises from the employment of Plaintiff by Defendant MRM Investment Co. ("MRM"), a Kentucky Fried Chicken ("KFC") franchisee. Ms. Cooper was hired by MRM to work at its Waverly Tennessee KFC on or about January 3, 2000. Plaintiff alleges that, while working for MRM, she was sexually harassed by Defendant Terry Rogers, one of the owners of MRM, and was constructively discharged by Defendants on or about August, 2000.

As part of her employment contract, and prior to commencing work at KFC, Plaintiff signed a document entitled "Arbitra-tion of Employee Rights." The document provides:

> ... KFC and I agree to use confidential binding arbitration for any claims that arise between me and KFC, its related companies and/or their current or former employees. Such claims would include any concerning compensation, employment including, but not limited to any claims concerning (sexual harassment), or termination of employment ... In any arbitration, the prevailing rules of the American Arbitration Association and, to the extent not inconsistent, the prevailing rules of the Federal Arbitration Act will apply.

(Doc. No. 16, Exh. A)(herein, "KFC Arbitration Agreement").

Defendants now argue that Plaintiff and Defendants have bargained for mandatory arbitration, and thus her claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4–21–101 *et seq.*[1] Plaintiff responds that there is no agreement to arbitrate between herself and these particular Defendants, and, even if there is an agreement, that agreement is unenforceable because it require the Plaintiff to pay a portion of the costs associated with arbitration.

## II. LEGAL STANDARDS

■ The Supreme Court has recently held that agreements to arbitrate employment disputes as a condition of employment are almost universally enforceable under the Federal Arbitration Act, 9 U.S.C. §§ 1, *et. seq.* ("FAA"), *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Nevertheless, arbitration agreements may be

---

1. The Tennessee Human Rights Act specifically provides that it embodies the policies of the Federal Civil Rights Acts. Tenn.Code Ann. § 4–21–101(a)(1). Therefore, this Court will analyze Plaintiff's complaints pursuant to federal law.

attacked under "such grounds as exist at law or in equity for the revocation of a contract." 9 U.S.C. § 2.

The Sixth Circuit has consistently held that pre-dispute mandatory arbitration agreements are valid. *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir.2000); *Willis v. Dean Witter Reynolds, Inc.* 948 F.2d 305, 310 (6th Cir.1991). Specifically, the Sixth Circuit has held that the employees may be required, as a condition of employment, to waive their right to bring future Title VII claims in court. *Willis, supra.* Almost every other Circuit to consider this issue has agreed with the Sixth Circuit.[2]

■ However, although the Supreme Court and lower courts endorse the use of arbitration, courts continue to emphasize that an employee cannot be required to forfeit any "substantive rights" as a condition of employment. *See Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Thus, " ... even if arbitration is generally a suitable forum for resolving a particular statutory claim, the specific arbitral forum provided under an arbitration agreement must nevertheless allow for the effective vindication of that claim." *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir.2000).

Some courts have held that requiring a plaintiff to pay for the right to vindicate their federal substantive rights would amount to an insurmountable obstacle. *See e.g. Paladino v. Avnet Computer Tech, Inc.*, 134 F.3d 1054 (11th Cir.1998); *Shan-*

*kle v. B–G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230 (10th Cir.1999)(finding that requiring the Plaintiff to pay costs renders the arbitral forum invalid); *Cole v. Burns Int'l Sec. Serv.*, 105 F.3d 1465 (D.C.Cir.1997)(same). *Cf. Bradford v. Rockwell Semiconductor Sys., Inc.*, 238 F.3d 549, 556 (4th Cir.2001)(declining to follow the per se rule, but holding that courts should assess whether the fees associated with arbitration are prohibitive to the actual employee in the present case); *Manuel v. Honda R & D Americas, Inc.*, 175 F.Supp.2d 987 (S.D.Ohio 2001)(same).

■ Additionally, although mandatory arbitration is presumed valid, the waiver of any rights (substantive or procedural), must be both knowing and clear. *See K.M.C. Co., Inc. v. Irving Trust Co.*, 757 F.2d 752 (6th Cir.1985); *Trumbull v. Century Marketing Corp.*, 12 F.Supp.2d 683, 687 (N.D.Ohio.1998)("[t]o conclude that there was a waiver of [the right to a jury trial], there must be evidence that the plaintiff intended such waiver.").

■ Finally, and most fundamentally, an agreement to arbitrate Title VII rights must comport with the principles of contract law. In deciding whether the arbitration agreements are enforceable, state-law contract principles control. *Floss*, 211 F.3d at 314.

■ First, although courts may not invalidate arbitration agreements under state laws that only apply to arbitration provisions, general contract defenses may

---

2. *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 163 F.3d 53 (1st Cir.1998); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198 (2d Cir.1999); *Seus v. John Nuveen & Co.*, 146 F.3d 175, 182 (3d Cir.1998); *Austin v. Owens–Brockway Glass Container, Inc.*, 78 F.3d 875 (4th Cir.1996); *Alford v. Dean Witter Reynolds, Inc.*, 939 F.2d 229 (5th Cir.1991); *Willis*, 948 F.2d 305 (6th Cir.1991); *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir.1999); *Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832 (8th Cir.1997); *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir.1994); *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698 (11th Cir.1992). Only the Ninth Circuit has arrived at the opposite conclusion. See *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir.),

still operate to invalidate an arbitration agreement. *Doctor's Assoc. Inc. v. Casarotto,* 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). The Sixth Circuit has held that a contractual agreement to arbitrate may be invalidated by a showing of fraud, duress, mistake, unconscionability or any other ground upon which a contract may be set aside. *Haskins,* 230 F.3d at 239; *accord Steven M. Burton v. J.C. Bradford & Co., L.L.C.,* No. 3:97–0153 (March 13, 1998, Nixon, J.). In *Haskins,* the Sixth Circuit explicitly rejected the more permissive approaches of two sister circuits. 230 F.3d at 235. *See Rosenberg,* 170 F.3d at 20 (arbitration may only be compelled in "appropriate cases," the language used by the 1991 amendments to the Civil Rights Act); *Prudential Ins. Co. of Am. v. Lai,* 42 F.3d 1299, 1305(9th Cir.1994)(holding that "a Title VII plaintiff may only be forced to forego her statutory remedies and arbitrate her claims if she has *knowingly* agreed to submit such disputes to arbitration"). *See also Manuel,* 175 F.Supp.2d at 996–97 (discussing *Haskins* ).

■ Most importantly, an arbitration agreement may not be upheld if it is unconscionable. As a Tennessee Court recently observed:

Unconscionability may arise from a lack of a meaningful choice on the part of one party (procedural unconscionability) or from contract terms that are unreasonably harsh (substantive unconscionability). *Williams v. Walker–Thomas Furniture Co.,* 350 F.2d 445 (D.C.Cir.1965). In Tennessee we have tended to lump the two together and speak of unconscionability resulting when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept

them on the other. *Haun v. King,* 690 S.W.2d 869, 872 (Tenn.Ct.App.1984).

*Trinity Indus., Inc. v. McKinnon Bridge Co., Inc.,* 2001 WL 1504827 (Tenn.Ct.App. 2001).

■ Furthermore, Tennessee law disfavors adhesion contracts. The Tennessee Supreme Court recently observed that an adhesion contract is a

'standardized form offered to consumers . . . on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract.'

*Buraczynski v. Eyring,* 919 S.W.2d 314, 320 (Tenn.1996) (*quoting* Black's Law Dictionary 40 (6th ed.1990)). However, in Tennessee, an adhesion contract is only unenforceable when the terms of the contract are "beyond the reasonable expectation of an ordinary person, or oppressive or unconscionable." *Id.* (citation omitted). In the mandatory arbitration of employment disputes context, the Ninth Circuit recently held, on remand, that the arbitration agreement at issue was unconscionable "because it is a contract of adhesion . . ." and was substantively one-sided, lacking a " 'modicum of bilaterality.' " *Circuit City Stores, Inc. v. Adams,* 279 F.3d 889 (9th Cir.2002)("*Circuit City II*") (citation omitted).

■ Second, the Sixth Circuit has also held that in order for a mandatory arbitration agreement to be valid, there must be adequate consideration. *Floss,* 211 F.3d at 315. In deciding whether contracts are enforceable, federal courts must look to state contract law. *Perry v. Thomas,* 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987). In Tennessee, consideration is an essential element of every contract. *Price v. Mercury Supply Co.,*

682 S.W.2d 924, 933 (Tenn.Ct.App.1984). Hence, a promise is legally enforceable only if the promisor receives an act, forbearance or a promise thereof, in return for that promise. *See Kozy v. Werle,* 902 S.W.2d 404, 411 (Tenn.Ct.App.1995). In essence, there must be a mutuality of obligation. *Floss,* 211 F.3d at 315.

 Finally, as with all contracts, it is axiomatic that in order for there to be a valid contract the parties must manifest their assent to a bargain in order to be bound by it. *Higgins v. Oil, Chem. and Atomic Workers Intern. Union, Local No. 3–677,* 811 S.W.2d 875 (Tenn.1991).

### III. DISCUSSION

*A. Is there an Arbitration Agreement Between these Parties?*

 Plaintiff initially argues that there is no enforceable contract between Plaintiff and Defendants because she did not agree to arbitrate employment disputes with these particular Defendants, but only with KFC. Since Plaintiff was actually employed by MRM Investment Company, she claims that she is not bound by the arbitration agreement in this case, since KFC is not a named defendant. Although the Arbitration Agreement specifically includes KFC's "related companies ... and/or their current or former employees," Plaintiff asserts that MRM is not a related company and Terry Rogers and Larry Mays are not current or former employees of KFC or its related companies. Defendants contend that, for the purposes of this contract, MRM and KFC are synonymous, and, even if this were not the case, MRM is a "related company" of KFC.

The Court rejects Plaintiff's contention that she did not have a contract with MRM. Clearly, a franchisee of KFC is a "related company" under the plain meaning of the contract. Furthermore, Mays and Rogers are "current or former" employees of KFC or its related companies—

i.e. MRM. Thus, there is an agreement to arbitrate between Plaintiff and the Defendants.

*B. Are there any Reasons to Set Aside the Arbitration Agreement?*

As discussed above, agreements to arbitrate are favored by the courts, and will only be set aside where there is a showing of traditional legal and equitable reasons for refusing to enforce the agreements. 9 U.S.C. § 2. Therefore, the Court will analyze the contractual agreement to arbitrate and determine its validity. The Court will also consider whether any defenses to the formation of a contract are applicable.

### 1. Unconscionability

Having already analyzed the Arbitration Agreement and determined that it constitutes an agreement between Plaintiff and the Defendants, the Court will next determine whether any state law defenses to the contract are applicable. First, while the Court is not aware of any fraud or duress associated with the formation of this contract, the defense of unconscionability may be applicable to mandatory arbitration agreements in the employment discrimination context. *Circuit City II,* 279 F.3d 889.

In *Circuit City II,* the Ninth Circuit found that the arbitration agreement at issue was a contract of adhesion, and therefore it was procedurally unconscionable. The Court also found that the agreement was substantively unconscionable because the mandatory arbitration agreement only applied to the employees; the employer was not bound to arbitrate its claims.

The Ninth Circuit considered California law in making its determination, which, as interpreted by that Court, varies somewhat from Tennessee law. In Tennessee, a contract of adhesion is only invalid if it is unconscionable. *Buraczynski,* 919 S.W.2d

at 320. Thus, this Court must first determine whether the KFC Arbitration Agreement is a contract of adhesion and, if so, whether it is unconscionable.

The Court finds that, applying the Tennessee law discussed above, the KFC Arbitration Agreement is a contract of adhesion. In *Buraczynski*, the Tennessee Supreme Court surveyed the law to find that "Courts generally agree that '[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.'" 919 S.W.2d at 320, citing *Broemmer v. Abortion Serv. of Phoenix, Ltd.*, 173 Ariz. 148, 840 P.2d 1013, 1016 (1992). The *Buraczynski* Court found that the arbitration agreements at issue were contracts of adhesion because the agreements were "standardized form contracts prepared by the contracting party with superior knowledge of the subject matter ... [and] offered ... on a 'take it or leave it' basis." 919 S.W.2d at 320. The same is true of the KFC Arbitration Agreement. In fact, MRM's attorney conceded as much at the April 8, 2002 hearing. This agreement is a form contract, drafted by KFC's attorneys, offered to Plaintiff on a "take it or leave it" basis. Plaintiff had no choice.[3] She either had to accept the job based on the terms outlined in the KFC Arbitration Agreement, or she

had to find another job. *See Trumbull,* 12 F.Supp.2d at 686 ("employment contracts rarely result from bargaining between the parties. Rather, an employee is given a contract to sign on a take-it-or-leave-it basis"). Especially in today's economy, the choice to "leave it" often amounts to no choice at all. Indeed, if she "leaves it", she probably foregoes the opportunity for employment.[4] *Id.* Hence, the KFC Arbitration Agreement is a contract of adhesion.

A contract of adhesion is only invalid if it is also unconscionable. *Pyburn v. Bill Heard Chevrolet,* 63 S.W.3d 351 (Tenn. App.2001). In Tennessee, courts will only refuse to enforce a contract of adhesion where "the terms of the agreement are beyond the reasonable expectations of an ordinary person, or oppressive or unconscionable." *Buraczynski,* 919 S.W.2d at 320. The Tennessee Supreme Court also recognized that "Courts will not enforce adhesion contracts which are oppressive to the weaker party...." *Id.*

The Court finds that the KFC Arbitration Agreement is both oppressive to the weaker party and unconscionable. Although the *Buraczynski* Court found that the arbitration agreements at issue in that case were not oppressive or unconscionable, that case is distinguishable on a num-

---

**3.** It is important to note that this case involves employment at a fast food establishment, not a brokerage house. Many of the cases involving mandatory arbitration have involved mandatory arbitration under Securities Registration Form U–4, a form used by the major stock exchanges. *See e.g. Gilmer; Haskins; Willis.* However, the precedential value of those cases is undermined by the clear difference between employees seeking employment at Dean Witter or Prudential, and those seeking employment at KFC. The bargaining position of the latter is, on average, weaker than the bargaining position of employees at brokerage firms. While this difference is not determinative, it certainly informs the Court's thinking

**4.** The Court notes the increasing trend toward mandatory arbitration in employment contracts. Thus, prospective employees often have no choice at all—that is, even if they decide to walk away from one mandatory arbitration contract, they will often have no choice but to accept another employment contract that mandates arbitration as well. *See* John A. Gray, *Have the Foxes Become the Guardians of the Chickens?*

*The Post–Gilmer Legal Status of Predispute Mandatory Arbitration as a Condition of Employment,* 37 Vill. L.Rev. 113, 115 (1992).

ber of grounds. First, *Buraczynski* concerned a physician-patient arbitration agreement, not an employment agreement. The pressure facing a prospective employee coupled with the uniform incongruity in bargaining positions between the employer and employee, renders the KFC Arbitration Agreement different from a physician-patient agreement. Second, the *Buraczynski* Court emphasized that the agreement at issue specified, "in ten point capital letter red type, directly above the signature line, that 'by signing this contract you are giving up your right to a jury or court trial....'" 919 S.W.2d at 321. No such language is present in the KFC Arbitration Agreement. A court in this circuit has recognized that the waiver of the right to a jury trial must be both knowing and clear. *Trumbull*, 12 F.Supp.2d at 687. If the employee is not clearly made aware of the rights she is waiving, that waiver is not only invalid, but the entire agreement is rendered unduly oppressive.

Nevertheless, even if the KFC Arbitration Agreement contained all of the various rights Plaintiff waived by "agreeing" to arbitrate her future dispute in CAPITALIZED TWELVE POINT FONT, the Court would still find that this Arbitration Agreement is oppressive and unconscionable, both on its face and inherently.[5] This Court is particularly concerned with the encroachment upon Plaintiff's liberty interest. Thus, for the reasons discussed below, the Court finds that this arbitration contract is unconscionable.

As discussed above, in Tennessee a contract is unconscionable if "the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on the one hand, and no honest and fair person would accept them on the other." *Haun v. King*, 690 S.W.2d at 872. If the ordinary employee were informed of the consequences of signing the arbitration agreement, and if that employee had a choice, she would not sign that agreement. However, in the employment context, the employee simply has no choice. As the D.C. Circuit recognized in *Williams*, "when a party of little bargaining power, and hence little real choice, signs a commercially unreasonable contract with little or no knowledge of its terms, it is hardly likely that his consent, or even an objective manifestation of his consent, was ever given to all the terms." 350 F.2d at 450. Additionally, the attorneys that drafted the KFC Arbitration Agreement would certainly never sign that agreement if they were in Plaintiff's shoes.[6] Thus, considering all of the surrounding circumstances, this Court finds that not only would an ordinary person be shocked by the oppressive terms of this Arbitration Agreement, but no honest and fair person would accept these terms, knowing the full ramifications of doing so.[7]

---

**5.** Therefore, employers cannot simply make the arbitration agreement longer and more detailed in order to "correct" the inherent problems associated with many pre-dispute mandatory arbitration agreements.

**6.** In the words of President Kennedy, "[t]he heart of the question is whether all American are to be afforded equal rights and equal opportunities, *whether we are going to treat our fellow American as we want to be treated.*" President John F. Kennedy's Radio and Television Report to the American People on Civil Rights (June 11, 1963), Pub. Papers 468, 469 (1963).

**7.** This Court is aware of the difficulties facing employers, who must deal with many employment discrimination claims, many of which are ultimately found to be without merit. The Court is also mindful of the large number of employment discrimination cases in the federal court system. However, this Court will not overlook the clear unconscionability of these arbitration agreements in order to achieve greater efficiency or convenience. This issue

However, the KFC Arbitration Agreement does contain a measure of what the California courts have termed a "modicum of bilaterality." *Circuit City II, citing Armendariz v. Found. Health Psychcare Servs., Inc.,* 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 692 (2000). In *Circuit City II,* the Ninth Circuit found that the Circuit City arbitration agreement was substantively unconscionable because, although the employee is compelled to arbitrate his or her claims, the employer remains free to litigate its own claims. As the California Supreme Court observed, where the employer is not bound to arbitrate its claims, and there is no clear justification for this lack of mutuality of obligations, arbitration functions "less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage." *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 692. At oral arguments, MRM's counsel confirmed that the KFC Arbitration Agreement imposes mandatory arbitration on the employee and the employer. *See, Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,* 191 F.3d 198, 207 (2d Cir.1999)(noting that U–4 arbitration form binds both parties to mandatory arbitration, and thus is not a contract of adhesion). Thus, the KFC Arbitration Agreement is not as asymmetrical as the agreement invalidated by the *Circuit City II* Court. Nevertheless, the agreement was still drafted by KFC, and imposed on a prospective employee precisely at the time that he or she is most willing to sign anything just to get a job. Although the KFC Arbitration Agreement binds both parties, only the Defendant is aware of the ramifications of the agreement. *See Hooters of Am. v. Phillips,* 39 F.Supp.2d 582, 615 (D.S.C.1998)(noting the disparity between the Defendants and the Plaintiffs' knowledge of the arbitration agreement). Furthermore, only the Defendant is aware of the myriad of the Title VII rights and remedies that Plaintiff foregoes by "agreeing" to arbitrate her disputes. *See id.* at 614 (noting that under the agreement, Plaintiff has been "stripped of her right to a judicial forum for a Title VII violation and ... stripped of numerous remedies under Title VII," and finding the agreement unconscionable). Therefore, this Court finds that there is an insufficient "modicum of bilaterality" present in this case. In other words, there is an asymmetry born out of a difference in bargaining power that pervades the resulting arbitration agreement.[8] Thus, for all of these reasons, the Court finds that the KFC Arbitration Agreement is unconscionable.

## 2. Plaintiff's Substantive Rights

 Even if this Court found no contractual defenses to the enforcement of the KFC Arbitration Agreement, Plaintiff's substantive rights are affected by the agreement. Courts have recognized that, although arbitration agreements are generally favored, they will not be enforced if they affect an individual's substantive rights. *Gilmer,* 500 U.S. at 28, 111 S.Ct. 1647. Where an individual is unable to vindicate his or her rights because of an obstacle erected by an arbitration agree-

---

is simply too important. These cases do not "clog" the federal docket—they belong in federal court. Employees must not be forced to either forgo employment or forgo their right to a day in court, and Courts must not use the perceived problems associated with employment discrimination to prevent employees, and society at large, from vindicating the rights that Congress enshrined in the Civil Rights Acts.

**8.** *See Circuit City,* 121 S.Ct. at 1321 (Souter, J., Dissenting)("... arbitration could prove expensive or unfavorable to employees, many of whom lack the bargaining power to resist an arbitration clause if their prospective employers insist on one.")

ment, the court may not enforce that arbitration agreement.

 Courts have held that requiring the plaintiff to pay for the right to vindicate their federal substantive rights would amount to an insurmountable obstacle. *See e.g., Cole v. Burns Int'l Sec. Serv.,* 105 F.3d at 1465. In this case the Arbitration Agreement is silent on the parties' responsibilities for fees and costs. However, the agreement specifically indicates that the American Arbitration Association's ("AAA") rules would govern the arbitration proceedings. The AAA rules impose a number of fees and costs that Plaintiff would have to bear as the "initiating party." Requiring a party to pay fees and costs, over and above what that party would have to pay in a court, may deprive that party of the right to vindicate his or her rights.

In *Cole,* the D.C. Circuit observed that "it would undermine Congress' intent to prevent employees who are seeking to vindicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in Court." 105 F.3d at 1484. The Supreme Court recently observed that "where ... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).[9]

Although the Supreme Court held that requiring a Plaintiff to pay a share of the arbitration costs does not automatically render an arbitration clause invalid, the Court need not ultimately address this issue. In this case, Plaintiff's affidavit convinces the Court that she will be unable to pay the high costs of arbitration. The KFC Arbitration Agreement specifies that AAA arbitration rules would apply. AAA rules impose a number of fees and costs on the parties, (AAA Rules 38–41, Doc. No. 16, Exh. B), although the rules do not clearly prescribe the specific allocation of responsibility for payment of those fees and costs. Plaintiff's 2001 W 2 form (Doc. No. 16, Exh. A) shows that she received total net income of $7253.74 last year. Plaintiff, and others similarly situated, often cannot afford to pay the high costs of arbitration.[10]

Furthermore, arbitration proceedings are private proceedings, and in order to retain an arbitrator, Plaintiff (or her attorney) would be required to pay at least part of that arbitrator's fee.[11] The AAA also specifies various other fees that surpass the modest filing fees charged by the federal courts. Although the AAA may waive some of its fees, "the mere fact that [plaintiff] might obtain some relief from the significant fees ... does not prohibit the conclusion that she has shown the 'likelihood' of incurring such fees, as required by the Supreme Court's *Green Tree* decision." *Ball,* 165 F.Supp.2d at 240, n. 10. In this case, Plaintiff will not be able to pay the costs of arbitrating her employment dispute. (Cooper Aff., Doc. No. 16,

---

**9.** A federal court recently held that, under *Green Tree,* an employee need only show a likelihood that he or she will be responsible for significant costs associated with the arbitral forum, rather than focusing on that employee's specific financial situation. *Ball v. SFX Broad., Inc.,* 165 F.Supp.2d 230, 239–40 (N.D.N.Y.2001).

**10.** Costs of arbitrating Plaintiff's dispute may very well exceed her yearly salary for 2001.

**11.** Other than paying her taxes, Plaintiff is not required to pay part of my salary as a federal judge.

Exh. A). Since this fact might prevent her from being able to vindicate her federal statutory rights, Supreme Court precedent mandates that this court may not compel arbitration.

■■■ Defendants maintain that even if this Court were to find that fees associated with arbitration are excessive, Plaintiff's argument relating to costs is moot because MRM has now agreed to pay all of the costs associated with arbitration. (Doc. No. 19, p. 11). Plaintiff responds that this Court should not allow the Defendants to sever an invalid provision of the contract after the Court has found that provision to be invalid. Citing *Perez v. Globe Airport Sec. Serv., Inc.,* 253 F.3d 1280 (11th Cir. 2001), Plaintiff stresses that allowing an employer to include unlawful provisions in their arbitration agreements and sever those provision when challenged, would encourage the employer to overreach. In other words, as the *Perez* Court notes:

> To sever the costs and fees provision and force the employee to arbitrate a Title VII claim despite the employer's attempt to limit the remedies available would reward the employer for its actions and fail to deter similar conduct by others

253 F.3d at 1287. Plaintiff noted at oral argument that allowing the employer to overreach initially would result in the creation of a disincentive to the Plaintiff's vindication of her Title VII rights. *Accord Perez. Cf Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 683 n. 8 (8th Cir.2001)(questioning the *Perez* Court's analysis, insofar as it relied on "public-policy arguments."). The Court agrees. The KFC Arbitration Agreement may deter some employees from initiating proceedings in the first place because the agreement, under the AAA Rules, mandates fee splitting. Therefore, Plaintiff was forced to file suit in federal court in order to have this Court hold that the fee

splitting provision is invalid. The Defendants will not be allowed, at this point, to abandon a provision that KFC's attorneys carefully drafted, in order to "save" the Arbitration Agreement. If Defendants could sever invalid provisions from their contracts, the Court would create an incentive for employers to craft questionable arbitration agreements, require plaintiffs to jump through hoops in order to invalidate those agreements, and ultimately allow the defendants to jettison questionable provisions from the arbitration agreements. Allowing Defendants to do so at this point would be inequitable.

### 3. Societal Rights

■■■ In addition to the individual substantive rights that are deprived by the KFC Arbitration Agreement, there are a number of societal rights that this mandatory Arbitration Agreement curtails. Federal courts, and courts in general, have a very important role in the Civil Rights context. As the Supreme Court observed:

> When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law. [Thus, a Plaintiff acts not only for] himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority.

*Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam). *See also* EEOC, Notice No. 915.002, Policy Statement on Mandatory Binding Arbitration of Employment Discrimination Disputes as a Condition of Employment (1997), *available at* 1997 WL 33159163, * 5. Therefore, mandatory pre-dispute arbitration deprives this Plaintiff of her right to not only vindicate her own rights, but also society's right to condemn "invidious bias" in the workplace

through a private attorney general. *McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 357, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

## IV. CONCLUSION

Therefore, the Court will neither dismiss this case at this time nor compel arbitration. A federal court is the proper forum for Plaintiff to seek to vindicate her rights under the Civil Rights Act and the Tennessee Human Rights Act. Thus, Defendants' motion is hereby DENIED, and this case will proceed before this Court.

It is so ORDERED.