Rosann M. **WILKS, et al., Plaintiffs,**

v.

THE PEP BOYS, **Defendant.**

No. CIV. 3:02–0837.

United States District Court,
M.D. Tennessee,
Nashville Division.

Jan. 8, 2003.

---

Charles P. Yezbak, III, Nashville, TN, Gregory K. McGillivary, Farn L. Holland,

Woodley & McGillivary, Washington, DC, for plaintiffs.

Kathy B. Houlihan, Morgan, Lewis & Bockius, Washington, DC, Michael L. Banks, Megan E. Shafer, Morgan, Lewis & Bockius, Philadelphia, PA, Mark C. Travis, Wimberly, Lawson, Seale, Wright & Daves, PLLC, Cookeville, TN, Michael Ward Jones, Wimberly Lawson Seale Wright & Daves, PLLC, Nashville, TN, for defendant.

## MEMORANDUM

TRAUGER, District Judge.

The defendant has filed a Motion to Dismiss or, in the alternative, Stay Litigation and Compel Arbitration with respect to certain plaintiffs (Docket No. 31), to which the plaintiffs have responded (Docket No. 52) and the defendant has replied (Docket No. 61).

The defendant asserts that the majority of plaintiffs have signed arbitration agreements in connection with their employment with the defendant that cover the claims being asserted in this case under the Fair Labor Standards Act ("FLSA"). Over time, the defendant has modified the arbitration agreement on several occasions. Therefore, several different versions of the agreement were signed by various of the plaintiffs. However, the provisions that will determine this court's ruling on the pending motion appear substantially unaltered in all relevant versions of the agreement.

The arbitration agreement is called a "Mutual Agreement to Arbitrate Claims" ("Agreement"). (Docket No. 33, Ex. 1A) The Agreement is to be executed by the employee and a management employee of the defendant at the time of employment and is referenced in the Operations Employment Guide (Docket No. 33, Ex. 1, at 34), which the defendant alleges is given to each employee. It is a separate agreement that cannot be revoked or modified except by a writing signed by both parties. Its coverage extends to "all claims or controversies ..., past, present or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment. that the company may have against me or that I may have against [the company, its representatives, its affiliated entities or its benefit plans]," including, "claims for wages or other compensation due." The claims made in this case under the Fair Labor Standards Act would come within the Agreement.

The provisions which the plaintiffs maintain make this arbitration agreement invalid are: (1) it provides that the "legal doctrine of tolling, equitable or otherwise, shall not apply to extend the statute of limitations for bringing a claim covered by this Agreement;" (2) it limits each party to taking the deposition of one individual (exclusive of expert witnesses); (3) it requires an employee to pay the arbitration organization's filing fee and half of the fees and costs of the arbitration; (4) it gives the arbitrator discretion to award or not to award attorney's fees to the prevailing party. In addition, the plaintiffs claim that this agreement is invalid as lacking in consideration and because it constitutes an "illusory promise" in that the Operations Employment Guide allows for the defendant to change and modify the arbitration agreement at any time.

 When the validity of an agreement to arbitrate is put in issue, as it has been here, the court, not the arbitrator, must decide that question. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir.2002) (internal citations omitted). The party opposing arbitration must show that there is a genuine issue of material fact as to the validity of the arbitration

agreement. *Id.* The language of the agreement must be viewed in light of the "strong federal policy in favor of arbitration.... [A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider,* 228 F.3d 709, 714 (6th Cir.2000), *cert. denied,* 531 U.S. 1148, 121 S.Ct. 1088, 148 L.Ed.2d 963 (2001). An agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

■ The court finds that the plaintiffs' claims that the Agreement is invalid for lack of consideration and because it constitutes an "illusory promise" are without merit. Both parties are bound to arbitrate claims arising in their relationship, and the Agreement, which is separate and apart from the Operations Employment Guide, cannot be revoked or modified without a writing signed by both parties. Therefore, there is sufficient consideration for the mutual promises, and the employer has not given an illusory promise. *Floss v. Ryan's Family Steak Houses, Inc.,* 211 F.3d 306, 315 (6th Cir.2000). The other alleged invalid provisions will be discussed in turn.

### Equitable Tolling Provision

As to the equitable or other waiver of the tolling of the statute of limitations contained in some of the Agreements, the plaintiffs claim that this is the kind of substantive right afforded by the Fair Labor Standards Act that they cannot be made to forego in arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). The court requested further briefing on this particular point (Docket No. 64), but neither party has referred the court to any cases directly on point (Docket Nos. 70,

74). The defendant maintains that equitable tolling is not a substantive right and therefore may be waived. The defendant also argues that the arbitrator has the authority to find the waiver provision unenforceable, or the court can simply sever that provision from the Agreement.

■ Whether or not equitable tolling of the statute of limitations is a substantive right, under the Agreement and the rules of the two arbitration services to be used, equitable tolling is not foreclosed. With slight variations, the various versions of the Agreement used over the last several years by the defendant contain this provision:

> The Arbitrator shall apply the substantive law including but not limited to applicable statutes of limitations (and the law of remedies, if applicable) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted. The Arbitrator is without jurisdiction to apply any different substantive law or law of remedies.

(Docket No. 32, Ex. A; *see also* Docket No. 61, Exs. 1A–E). If the doctrine of equitable tolling is not substantive law, it certainly impacts the statute of limitations. To the extent that this provision is inconsistent with the waiver of equitable tolling that appears above it in the Agreement, the inconsistency must be interpreted against the drafter of the Agreement, the defendant. *Mastrobuono v. Shearson Lehman Hutton,* 514 U.S. 52, 57, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Therefore, the above-quoted provision would prevail over the waiver of equitable tolling that also appears in the Agreement, to the extent that equitable tolling applies under the FLSA.

Moreover, the rules of the two organizations designated to conduct arbitrations under the Agreement, the American Arbitration Association ("AAA") and the Judi-

cial Arbitration and Mediation Services/Endispute ("JAMS"), would preserve the doctrine of equitable tolling for the plaintiffs.[1] Rule 34(d) of the AAA's National Rules for the Resolution of Employment Disputes ("National Rules") provides: "The arbitrator may grant any remedy or relief that the arbitrator deems just and equitable, including any remedy or relief that would have been available to the parties had the matter been heard in court."[2] Likewise, Standard No. 1 of the JAMS Policy on Employment Arbitration, Minimum Standards of Procedural Fairness ("Minimum Standards"), provides: "All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, must remain available in the arbitration."[3] And Rule 4 of the JAMS Employment Arbitration Rules & Procedures ("Rules & Procedures") provides: "If any of these Rules, or a modification of these Rules agreed on by the Parties, is determined to be in conflict with a provision of applicable law, the provision of law will govern, and no other Rule will be affected."[4]

Therefore, to the extent that equitable tolling applies under the Fair Labor Standards Act, an arbitrator from AAA or JAMS would be obligated under the Agreement itself and under the rules of his or her organization to apply the doctrine of equitable tolling. Therefore, the inclusion of the purported waiver of equitable tolling in the Agreement does not invalidate the Agreement.

## Discovery Provision

The Agreement provides for the following discovery:

> Each party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to propound requests for production of documents to any party.... Additional discovery may be had only where the Arbitrator selected so orders, upon a showing of substantial need.

The plaintiffs contend that, in the context of this collective FLSA case, that provision is "lopsided" and, therefore, unconscionable. The plaintiffs maintain that the defendant will only need to depose each plaintiff (its one deposition), but that the plaintiffs will need to depose numerous managers and other supervisory personnel in order to prove their claims.

■ First, the plaintiffs' argument is made in the context of a collective FLSA action, as the plaintiffs wish this case to be, not as applicable to an individual arbitration on an individual claim made by an individual plaintiff. As to an individual claim, the most relevant party to be deposed by the plaintiff, in fact, will be the direct supervisor or manager of the plaintiff. So, in the context of an individual arbitration, this provision is not "lopsided."

However, again, the rules of AAA and JAMS provide relief for the plaintiffs from this discovery provision. Rule 7 of AAA's

1. The Agreements provide that the "then-current employment arbitration procedures of the Sponsoring Organizations, as supplemented by this agreement," shall apply to the arbitration.

2. *See* American Arbitration Association, *National Rules for the Resolution of Employment Disputes,* (last modified 11/01/2002) <http://www.adr.org/in-dex2.1.jsp?JSPssid=15747 & JSPaid=37504>.

3. JAMS, *JAMS Employment Arbitration Rules & Procedures,* (last modified September 2002) <http://www.jamsadr.com/employment_guide.asp>.

4. *Id.*

National Rules provides that: "The arbitrator shall have the authority to order such discovery ... as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." This standard, more liberal than the "substantial need" standard in the Agreement, would determine the scope of discovery because Rule 1 of the National Rules provides that if an "adverse material inconsistency exists between the arbitration agreement and these rules, the arbitrator shall apply these rules."

Likewise, JAMS procedure forecloses lopsided discovery in favor of the employer. Standard No. 4 of the Minimum Standards provides for the "exchange of core information prior to the arbitration," and the Comment to that Standard provides that, in addition to one deposition for each side, "[o]ther discovery should be available at the arbitrator's discretion." Rule 2 of the JAMS Rules & Procedures mandates that these Minimum Standards prevail over any inconsistent agreement between the parties.

*Arbitration Fees and Costs*

 The plaintiffs allege that the potential costs to them of engaging in arbitration may be so substantial as to preclude them from effectively vindicating their federal statutory rights, making the Agreement invalid under *Green Tree Financial Corp. v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000). The Agreement ambiguously provides that the employee/plaintiff would pay the filing fee ("I understand that the rules of the Sponsoring Organization may require the payment

of a filing fee") and that "the parties shall equally share any fees and costs [other than the filing fee], including the Arbitrator's fee, in the amount and manner determined by the Arbitrator and/or the Sponsoring Organization provided, however, that the Company shall pay the full arbitrator's fee, where this is required by law." In support of their contention that these fees and expenses could be prohibitive for them, the plaintiffs have filed the affidavits of several labor/employment lawyers who have engaged in employment arbitration[5] and the affidavits of several plaintiffs as to their income. Again, the rules of the AAA and JAMS *presently in effect* prevent the scenario advanced by the plaintiffs.

The AAA Administrative Fee Schedule for "disputes arising out of employer-promulgated plans"[6] (applicable here) provides that the employee's share of the filing fee is "capped" at $125 "unless the plan provides that the employee pay less." The employer pays the remainder of the $500 filing fee, "unless the plan provides that the employer pay more." This fee schedule also provides: "Unless the employee chooses to pay a portion of the arbitrator's compensation, such compensation shall be paid in total by the employer. Arbitrator compensation and administrative fees are not subject to reallocation by the arbitrator(s) except upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous."

The JAMS Minimum Standards, Standard No. 6, provides: "An employee's access to arbitration must not be precluded by the employee's inability to pay any costs or by the location of the arbitration.

---

**5.** All of the information in the affidavits relates to costs and fees under earlier versions of the rules and procedures of the AAA and JAMS, not the current versions. The Agreement provides that "... any arbitration shall be in accordance with the then-current employment arbitration procedures of the Sponsoring Organizations...."

**6.** *See supra* n. 2.

The only fee that an employee may be required to pay is JAMS' Case Management Fee." Moreover, Rule 29(b) of the JAMS Rules & Procedures provides: "If an arbitration is based on a clause or agreement that is required as a condition of employment, the only fee that an employee may be required to pay is the JAMS Case Management Fee." Rule 2 of the Rules & Procedures, again, mandates the application of this rule, even in the face of an agreement between the parties to the contrary.

The JAMS website defines the Case Management Fee as "a non-refundable fee charged to each party for management of the case, including case convening/scheduling, use of conference facilities, document handling (agreements, position statements, supporting materials, exhibits and briefs), copying, faxing, postage and comprehensive on-site administrative/case follow-up support."[7] None of the lawyer affidavits provided by the parties addresses this JAMS Case Management Fee, nor do the JAMS website materials give a range for what this fee might be in any given case. It is the plaintiffs' burden here to establish that this fee would be "prohibitively expensive" (*see Green Tree*, 531 U.S. at 92, 121 S.Ct. 513), and they have failed to carry that burden. Moreover, given the aspirational comment in Standard No. 6, that the "employee's access to arbitration must not be precluded by the employee's inability to pay any costs," if the case management fee is excessive, the JAMS procedures would have it assessed primarily against the employer.

Numerous courts, including the Supreme Court in *Green Tree*, 531 U.S. at 90, 121 S.Ct. 513, the Sixth Circuit in *Floss*, 211 F.3d at 314, and Senior Judge Nixon of this court in *Cooper v. MRM Investment Co.*, 199 F.Supp.2d 771

(M.D.Tenn.2002), have expressed concern over arbitration agreements that provide for the splitting of costs between the parties. *See also American Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 711–12 (5th Cir.2002); *Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 558 (4th Cir.2001); *Cole v. Burns International Security Services*, 105 F.3d 1465, 1484–1486 (D.C.Cir.1997). Perhaps it is in response to these concerns expressed by the courts, coupled with the proliferation of arbitration agreements required as a condition of employment, that arbitration associations like AAA and JAMS recently have tightened their procedures to protect employees faced with a "take or leave it" arbitration agreement tied to an offer of employment. At any rate, this court does not find the fees and costs provision of the Agreement, as it must be applied to these plaintiffs, unconscionable or an obstacle to the plaintiffs' being able to effectively vindicate their FLSA rights in arbitration.

### *Attorney's Fees*

The plaintiffs complain that the Agreement gives the arbitrator *discretion* to award or not to award attorney's fees to the prevailing party. This assertion is in error. The Agreement does provide in one place that "the prevailing party on a statutory claim may also be awarded reasonable attorneys' fees and costs as determined by the arbitrator." But elsewhere, the Agreement mandates the application of the substantive law and the law of remedies that applies to the claim, here the FLSA. Because the FLSA mandates an award of attorney's fees to a prevailing plaintiff, the arbitrator would have to award them under the Agreement.

Moreover, again, the rules and procedures of the arbitration organizations safe-

---

**7.** *See supra* n. 3.

guard this important provision of the FLSA. Standard No. 1 of the JAMS Minimum Standards provides: "All remedies that would be available under the applicable law in a court proceeding, including attorneys fees and exemplary damages, must remain available in the arbitration." This Standard is mandatory for arbitration agreements required as a condition of employment. *See* Introduction, JAMS Minimum Standards.

Rule 34(e) of the AAA National Rules grants the arbitrator "the authority to provide for the reimbursement of representative's fees, in whole or in part, as part of the remedy, in accordance with applicable law." The "applicable law" here, the Fair Labor Standards Act, provides that a prevailing plaintiff must be awarded a reasonable attorney's fee and costs. 29 U.S.C. § 216(b). Because these are mandated, and because the arbitrator has the authority to award them, it is the court's interpretation of this rule that a AAA arbitrator would be required to award attorney's fees and costs to a prevailing FLSA plaintiff.

*Conclusion*

The various versions of the Agreement, as it must be administered by AAA and JAMS, is valid and enforceable. Therefore, as to the plaintiffs and prospective plaintiffs who have executed the Mutual Agreement to Arbitrate Claims in versions that do not differ in material respects from the versions before the court, this litigation will be dismissed, and those plaintiffs will be compelled to arbitrate their FLSA claims.

An appropriate order will enter.

It is so **ORDERED**.

*ORDER*

In accordance with the Memorandum filed contemporaneously herewith, it is hereby **ORDERED** that the defendant's Motion to Dismiss and Compel Arbitration (Docket No. 31) is **GRANTED** as to those plaintiffs and prospective plaintiffs who have executed the Mutual Agreement to Arbitrate Claims in versions that do not differ in material respects from the versions presently before the court. Those plaintiffs and prospective plaintiffs shall be compelled to arbitrate their claims under the Fair Labor Standards Act being asserted in this lawsuit.

The court presumes that the parties will be able to agree upon which plaintiffs, and which prospective plaintiffs who respond to the Notice, will be dismissed from this case and referred for arbitration. In the event that that is not the case, the court will become involved in that process.

It is so **ORDERED**.