## CIRCUIT COURT OF LOUDOUN COUNTY

Robert Bramow
and Helen Bramow

   v.

Toll VA, L.P.,
t/a Toll Brothers

February 7, 2005

Case No. (Law) 32714

BY JUDGE JAMES H. CHAMBLIN

This case came before the Court on January 7, 2005, on the "Motion to Dismiss or to Compel Arbitration" (the "Motion") filed by the Defendant, Toll VA, L.P., t/a Toll Brothers ("Toll"). After consideration of the grounds for the Motion, "Plaintiffs' Memorandum in Opposition to Defendant's Motion to Dismiss or Compel Arbitration" (the "Memorandum"), and the argument of counsel on January 7, 2005, the Motion is granted.

Pursuant to Va. Code § 8.01-581.02(A) and (D), the parties shall proceed to arbitration and this proceeding is stayed in its entirety.

The Plaintiffs, Robert Bramow and Helen Bramow, filed a motion for judgment against Toll for actual fraud, constructive fraud, breach of contract, breach of warranty, and nuisance. Pursuant to an Agreement of Sale (the "Agreement") dated February 11, 2002, Toll agreed to sell to the Bramows a parcel of real estate and to build thereon a certain style home for a purchase price of $434,975.00. The claims against Toll arise out of its alleged failure to properly grade the property and surrounding areas.

The Bramows purchased the property with settlement occurring on October 24, 2002. The motion for judgment was filed October 22, 2004.

Paragraph 11 of the Agreement provides as follows:

11. ARBITRATION: Buyer hereby agrees that any and all disputes arising out of this Agreement, the Home Warranty, or the construction or condition of the Premises including, but not limited to, disputes concerning breach of contract, express and implied warranties, representations, and/or omissions by Seller, on-site and off-site conditions and all other torts and statutory causes of action ("Claims") shall be resolved by binding arbitration in accordance with the rules and procedures of Construction Arbitration Services, Inc., or its successor or an equivalent organization selected by Seller. In addition, Buyer agrees that Buyer may not initiate any arbitration proceeding for any Claims unless and until Buyer has first given Seller specific written notice of each claim (at 3103 Philmont Avenue, Huntingdon Valley, PA 19006, Attn: Warranty Dispute Resolution) and given Seller a reasonable opportunity after such notice to cure any default, including the repair of the Premises, in accordance with the Home Warranty. The provisions of this paragraph shall survive settlement.

The initials of Mr. and Mrs. Bramow are affixed immediately below this paragraph in the Agreement after the words "Buyer's Initials."

In its Motion, Toll alleges that the Bramows failed to properly notify Toll of the allege default and have failed to give Toll a reasonable opportunity to remedy any alleged default, or, in the alternative, Toll has taken all reasonable efforts to cure any such default.

Toll asserts that, because the Bramows failed to give it the notice and reasonable opportunity to cure, they are "estopped" from either initiating arbitration proceedings or proceeding with this case.

In their opposition to the Motion, the Bramows assert the following:

1. The arbitration provisions of paragraph 11 of the Agreement are invalid and unenforceable because they are unconscionable;

2. Even if the arbitration provisions are valid, some of the causes of action are not subject to arbitration;

3. The Bramows did give Toll notice and a reasonable opportunity to cure the alleged defaults.

For the reasons hereinafter stated, I hold that the arbitration provisions of paragraph 11 of the Agreement are valid and enforceable, all the causes of action asserted in the motion for judgment are subject to arbitration, and the

issue of the adequacy of the notice and reasonable opportunity to cure should be addressed in the arbitration proceedings.

At the end of counsel's argument on January 7, 2005, all parties agreed that I could decide the issues raised by the Motion based upon the argument of counsel and the Memorandum including the factual representations made by counsel in argument and as set forth in the Memorandum.

## *Unconscionability Issue*

Virginia has adopted the Uniform Arbitration Act (Va. Code § 8.01-581.01 *et seq.*). Under the Act, a written agreement to submit a controversy between parties to arbitration is "valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract." If such an agreement is shown, then the Court shall order the parties to proceed with arbitration. Va. Code § 8.01-581.02(A).

If a provision of a contract is unconscionable, then it is revocable under general contract law. Therefore, a court should not compel arbitration where the arbitration provision is unconscionable. The Bramows base their unconscionability argument on two things, first, the arbitration provisions are one-sided, *i.e.*, they apply only to claims made by the Bramows as buyers, and, second, the Agreement is a contract of adhesion.

I agree that paragraph 11 only requires the Bramows, as buyers, to submit disputes to arbitration while Toll, as the seller, has certain judicial remedies under paragraph 6 of the Agreement if the buyers default. However, I do not agree that such a one-sided arbitration provision is unconscionable and unenforceable as a matter of law.

The Bramows cite two federal Court of Appeals cases in support of their one-sided arbitration unconscionability argument. *Iberia Credit Bureau, Inc. v. Cingular Wireless, L.L.C.*, 379 F.3d 159 (5th Cir. 2004), and *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002), are factually and legally distinguishable from this case and the position taken by the Bramows. Neither case involves a real estate sales contract. *Iberia Credit* involves deceptive trade practices allegations against cellular telephone service providers. *Circuit City* involves an employment agreement. While arbitration provisions were contained in the cellular telephone customer service agreements in *Iberia Credit* and in the employment agreement in *Circuit City*, neither case stands for the proposition that one-sidedness of the duty to arbitrate renders an arbitration provision unenforceable as a matter of law. Both cases recognize that it is just a factor to be considered in determining potential unconscionability.

The Bramows argue that the Agreement is a contract of adhesion because they as prospective home purchasers had little or no bargaining power and were required to forfeit rights to a judicial remedy for a default while Toll did not give up such rights. They offered no evidence of the lack of bargaining power. I do not think that it is common knowledge that potential home purchasers have little or no bargaining power. A real estate contract is not similar to the employment agreement in *Circuit City* where a prospective employee was required to sign a one-sided arbitration provision which also severely limited the relief available in arbitration as a condition of employment. A real estate contract is not similar to the cellular telephone customer service agreement in *Iberia Credit*. The two foregoing federal cases also considered such other factors as standard forms with small print and whether the arbitration provision is unduly burdensome.

Virginia certainly recognizes agreements to arbitrate. The validity of an agreement to arbitrate should be determined on the same basis as the validity of any type of contract. I know of no reason why parties to an agreement cannot bargain for and agree upon different types of remedies for a breach of a contract. There is no rule of which I am aware that requires all parties to a contract to have available all the same remedies. Parties are free to negotiate for different remedies for different types of breaches or for different parties. It is not uncommon for a real estate contract to have a provision that limits a seller's remedy for the purchaser's breach to a forfeiture of the deposit while the purchaser may retain all available remedies for a breach by the seller.

I cannot find from what has been presented to me that the Bramows were required by Toll to sign the Agreement with the arbitration provisions of paragraph 11 in order to purchase the subject property. Their initials below paragraph 11 clearly indicates they were aware of the arbitration provisions. There is nothing to show that the Bramows even asked for a modification to or removal of paragraph 11 or that Toll refused their request and told them they had to agree to the arbitration provision in order to purchase the property. The arbitration provision is clearly not hidden in the Agreement or in small print.

Judge William H. Ledbetter, Jr., of the Spotsylvania County Circuit Court in *Philyaw v. Platinum Enterprises, Inc.*, 54 Va. Cir. 364 (2001) (involving warranties on the purchase of a used car), sets forth an excellent concise discussion of unconscionability and contracts of adhesion. He correctly opines that an agreement is unconscionable if no person in his senses would make it on the one hand and no fair and honest person would accept it on the other. He also opines correctly that a contract of adhesion is a standard form contract, prepared by one party and presented to a weaker party, usually a consumer, who has no bargaining power and little or no choice about the terms.

Considering the two tests referred to above, I cannot under the circumstances as presented to me on the Motion find that the arbitration provision is unconscionable or that it forms a contract of adhesion.

The Bramows do not argue that they were unaware of the one-sided arbitration provision or that they did not understand it when they signed the Agreement. They would be hard pressed to do so in light of their initials just below paragraph 11. They assert that no one in their right senses would have agreed to the one-sided arbitration provision, but yet they did. I cannot agree that it is common knowledge, or even generally accepted, that the seller of a parcel of real estate, even if it is a seller of many parcels, commands so strong a position that the potential purchaser has little or no bargaining power or choice about the terms of the sale. The purchase of real estate is not as common an every day event as is the purchase of a cellular telephone or applying for a job.

There is no evidence of the circumstances under which the Agreement was signed. The provisions of paragraph 11 are not hard to understand. The average purchaser reading it would understand that any dispute he may have would be resolved by arbitration. If he did not understand what arbitration meant, then he should have found out before signing. I do not think that there is as much demand for homes similar to the one that is the subject of the Agreement as there is demand for cellular telephones and jobs. A person purchasing real estate is much more concerned over the terms of the purchase than the person buying a cellular telephone or applying for a job.

From Toll's point of view, I cannot find that it had to have been acting unfairly and dishonestly in accepting a contract with such a one-sided arbitration provision. Under the Agreement, Toll has the vast majority of the duties. It must construct the home and convey it to the Bramows under all the terms of the Agreement. It is not unfair, or even dishonest, for Toll to accept an agreement to arbitrate if there is a dispute over its performance. The Bramows are not without a remedy for a default by Toll. The terms for arbitration are not unreasonable or unduly burdensome. It does not require arbitration to take place in some remote location or require the Bramows to pay a certain portion of the arbitrator expenses regardless of the outcome as in *Philyaw*.

*Application of Arbitration Provisions*
*to the Causes of Action*
*Set Forth in the Motion for Judgment*

The arbitration provisions of Paragraph 11 of the Agreement cover disputes "arising out of" the Agreement.

While an arbitration clause covering disputes "relating to" a contract is broader than a clause covering disputes "arising out of" a contract, *Weitz v. Hudson*, 262 Va. 224 (2001) (a case I am very familiar with), all the words used in the arbitration clause must be considered.

The provisions of paragraph 11 define the disputes to be resolved by arbitration by more than just "arising out of" the Agreement. Paragraph 11 provides that such disputes include, "but not limited to, disputes concerning breach of contract, express and implied warranties, representations, and/or omissions by Seller (Toll), on-site and off-site conditions and all other torts. . . ."

Each cause of action in the motion for judgment is covered by the provisions of the arbitration clause, as follows:

| *Cause of Action* | *Provisions of Paragraph 11* |
| --- | --- |
| Actual Fraud | "representations and/or omission by Seller" "all other torts"" |
| Constructive Fraud | "representations and/or omissions by Seller" "all other torts" |
| Breach of Contract" | "breach of contract" |
| Breach of Warranty and Implied Warranty | "express and implied warranties" |
| Nuisance | "on-site and off-site conditions" "all other torts" |

I find that all the causes of action alleged are subject to the arbitration clause.

*Reasonable Opportunity to Remedy Issue*

As stated above, Toll takes the position that the Bramows failed to properly notify it and failed to give it a reasonable opportunity to remedy the alleged defaults, or, in the alternative, it has taken all reasonable efforts to cure such defaults. In their Memorandum, the Bramows allege, supported by copies

of documents sent to Toll, that they did properly notify Toll and it has had a reasonable opportunity to cure, but has not done so.

The notice and reasonable opportunity to cure provisions of paragraph 11 are conditions precedent to arbitration. They must be complied with before the Bramows can seek relief by arbitration. Any alleged failure to meet these conditions precedent should be addressed in the arbitration proceeding, not in this case.

Accordingly, there is no need to decide this issue in this case.