Terri LUCAS, an individual, Plaintiff,

v.

GUND, INC., a New Jersey Corporation, doing business registered in California, Russell Rossi an individual, Defendants.

No. CV 06–2880 ER.

United States District Court, C.D. California, Western Division.

Sept. 15, 2006.

---

Shannon M. Foley, Franscesca M. Walker, Business & Employment Law, Manhattan Beach, CA, for Plaintiff.

John K. Skousen, Lonnie D. Giamela, Fisher & Phillips LLP, Irvine, CA, for Defendants.

## ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION

RAFEEDIE, Senior District Judge.

This matter came before the Court on Defendant's Motion to Compel Arbitration on Monday, September 11, 2006 at 10:00 a.m. The Court has read and considered the parties' submissions and oral arguments and has reached the following conclusions:

■ The first step in determining what law governs the validity and effect of an arbitration provision is to determine whether the Federal Arbitration Act applies. The FAA applies to all contracts "evidencing a transaction involving commerce." 9 U.S.C. § 2. "Commerce" is defined as "commerce among the several States or with foreign nations." 9 U.S.C.

§ 1. This provision is to be interpreted broadly. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 112, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001) ("involving commerce" interpreted as "implementing Congress's intent 'to exercise its commerce power to the full' ").

■ Plaintiff, Ms. Lucas, contends that the FAA applies only to "employment contracts" and because this is a "non-compete agreement" the FAA shouldn't apply. This is a misstatement of the law. The FAA applies to all contracts involving commerce that contain an arbitration agreement, not just contracts for employment.[1] Ms. Lucas's argument is especially confusing because elsewhere in her brief she argues that the FAA does not apply to employment contracts because section 1 of the FAA exempts employment contracts from the Act.[2] This, however, is also a direct misstatement of the law. The Supreme Court specifically held in *Circuit City v. Adams* that section 1 only exempts employment contracts involving transportation workers. *See Adams,* 532 U.S. at 119, 121 S.Ct. 1302 ("section 1 exempts from the FAA *only* contracts of employment of transportation workers" (emphasis added)). Thus, the only issue as to whether the FAA applies is whether the contract between Ms. Lucas and Defendant Gund "involved commerce."[3]

■ Because Gund does business in all 50 states and in several foreign countries, and because Ms. Lucas was responsible for

---

1. 9 U.S.C. § 2 states that the FAA shall apply to *"a contract* evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction" (emphasis added). There is no limitation in § 2 as to what types of contracts are covered.

2. Plaintiff's Opposition to Motion to Compel, p. 5 n. 1 ("Section 1 of the FAA provides that the FAA shall not apply to employment contracts.").

3. Ms. Lucas also argues that the FAA shouldn't apply because this is a diversity case and state law should control, but this argument is without merit. Federal law governs the arbitrability of contract disputes within the coverage of the FAA, whether the matter is in state or federal court. *See, e.g., Mediterranean Enters. v. Ssangyong Corp.,* 708 F.2d 1458, 1463 (9th Cir.1983). For this same reason even though the agreement specifies that New Jersey law should govern, the FAA in fact controls.

sales in five different states, her employment involved "commerce" within the meaning of the FAA, and thus the FAA applies.

Under the Federal Arbitration Act, a written agreement to arbitrate shall be enforced by federal courts. 9 U.S.C. § 1, et. seq. A district court *shall* stay further proceedings and order arbitration if it determines (1) that a valid agreement to arbitrate exists, and (2) that the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir.2000). According to the Supreme Court, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

### I. Validity of the Agreement

Under the FAA, state contract law applies to determine whether an agreement to arbitrate is valid and enforceable. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir.2003). However, courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions. *Circuit City Stores, Inc. v. Adams (Adams III )*, 279 F.3d 889, 892 (9th Cir.2002). Only the general law of contracts is applied. *Id.* In this case, because Ms. Lucas resides in California and was employed in California, California's general law of contracts should govern the preliminary question of whether the agreement is enforceable. *See Adams III*, 279 F.3d at 892 ("Because [Appellant] was employed in California, we look to California contract law to determine whether the agreement is valid.").

Although the arbitration provision at issue is contained in an agreement entitled "Non–Compete Agreement," and covenants not to compete are generally not enforceable in California,[4] an otherwise valid arbitration agreement is enforceable separate and apart from the rest of the contract. *Buckeye Check Cashing v. Cardegna*, —— U.S. ——, ——, 126 S.Ct. 1204, 1209, 163 L.Ed.2d 1038 (2006). Thus, the sole issue to be considered here is whether the arbitration agreement itself is enforceable. If it is, the issue of the underlying contract's validity shall be considered by the arbitrator. *Id.*

Under California law, an agreement is enforceable unless it is *both* procedurally and substantively unconscionable. *Armendariz v. Foundation Health Psychcare Svcs. Inc.*, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, 690 (2000). Procedural and substantive unconscionability need not be present in equal amounts, however. *Id.* The two are evaluated on a "sliding scale," thus, the more evidence of procedural unconscionability there is, the less evidence of substantive unconscionability is needed to render the agreement unenforceable, and vice versa. *Id.*

### A. Procedural Unconscionability

Ms. Lucas contends that the agreement to arbitrate in this case is unenforceable because she did not have the opportunity to negotiate the provision and instead was essentially told to sign it or risk losing her job.[5] "Take it or leave it" agreements, also known as adhesion con-

---

**4.** *See Edwards v. Arthur Andersen LLP*, 142 Cal.App.4th 603, 47 Cal.Rptr.3d 788 (2006) (invalidating the Ninth Circuit's "narrow restraint" exception and clarifying that all noncompetition agreements except those regarding trade secrets are unenforceable in California).

**5.** Ms. Lucas also argues that the agreement is unenforceable because Gund provided no consideration for the agreement, however, the fact that Gund is also bound by the agreement is adequate consideration. *See Matterhorn, Inc. v. NCR Corp.*, 763 F.2d 866, 869 (7th

tracts, that condition an employee's continued employment on the signing of the agreement are procedurally unconscionable. *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 13 Cal.Rptr.3d 88, 95 (Ct.App.2004). To be unenforceable, however, the agreement as a whole must also be substantively unconscionable. *Id.*

The agreement provides that the dispute shall be resolved by final and binding arbitration "in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association." Ms. Lucas argues that because she was not handed any AAA rules when signing the agreement, and because the rules which she has now been provided are 2006 rules and not the 2003 rules that were in place when the agreement was signed, the agreement is unenforceable.

■■■ Agreements which incorporate the rules of a third-party organization without providing the employee with those rules at the time of signing can be procedurally unconscionable if the employee is not provided a copy of the rules upon signing the agreement. *See, e.g., Fitz*, 13 Cal.Rptr.3d at 101; *Harper v. Ultimo*, 113 Cal.App.4th 1402, 7 Cal.Rptr.3d 418, 422–23 (Ct.App. 2003). However, in those cases, the decisions seem to be based on the additional fact that the rules were not fair to the weaker party. For example, in *Harper*, the arbitration agreement between a merchant and a customer incorporated the rules of the Better Business Bureau. *Harper*, 7 Cal.Rptr.3d at 422. This was unfair because by not being given a copy of the BBB rules, the customer was not made aware that those rules severely limited his available remedies. *Id.* In *Fitz*, as in this case, the rules at issue were the AAA rules. *Fitz*, 13 Cal.Rptr.3d at 101. The employee in *Fitz* was also not given a

copy of those rules upon signing the arbitration agreement. *Id.* However, in *Fitz*, the problem was not just that the employee was not given a copy of the AAA rules, but that the AAA rules conflicted with unfair provisions in the arbitration agreement. *Id.* The provisions included in the *Fitz* arbitration agreement unreasonably limited discovery, and the court pointed out that the employer "should not be relieved of the effect of an unlawful provision it inserted in the [arbitration agreement] due to the serendipity that the AAA rules provide otherwise." *Id.*

This case differs from both *Harper* and *Fitz*. In those cases, the problem wasn't just that the rules were not attached, but that it was done to hide the fact that the weaker party was giving up significant rights. Unlike the Better Business Bureau rules in *Harper*, which limited the remedies available, the AAA rules do not limit the remedies available to Ms. Lucas. The AAA rules state that "the arbitrator may grant any remedy or relief that would have been available to the parties had the matter been heard in court." AAA Employment Dispute Rule 39. Further, unlike in *Fitz*, where the arbitration agreement contained unfair provisions that conflicted with the AAA rules, the agreement in this case contains no conflicting provisions. It simply states that all disputes shall be resolved in accordance with the AAA rules governing employment disputes. Thus, while it may have been procedurally unfair to have Ms. Lucas sign an agreement referencing rules which were not attached at the time, it would only render the agreement unenforceable if those rules were substantively unconscionable.

■■■ As to which version of the AAA rules apply, the 2003 or 2006 versions, the

Cir.1985) ("If the agreement of one party to arbitrate disputes is fully supported by the other party's agreement to do likewise, there is no need to look elsewhere in the contract for consideration for the agreement to arbitrate.").

AAA rules themselves state that "these rules, and any amendment of them, shall apply in the form in effect *at the time the demand for arbitration or submission is received by the AAA.*" AAA Employment Dispute Rule 1 (emphasis added). When an agreement references other rules but does not specify which version of the rules should apply to the dispute, but the referenced rules themselves answer that question, those rules control. *See Evans v. CenterStone Dev. Co.*, 134 Cal.App.4th 151, 35 Cal.Rptr.3d 745, 750 (Ct.App.2005) (finding that when an agreement provided certain rules should govern but did not specify which version of the rules, the rules' provision applying those in effect on the date of commencement of the arbitration should control).[6]

### B. *Substantive Unconscionability*

 Ms. Lucas first argues that because "there is a basic principle of non-waivability of statutory civil rights in the workplace"[7] the agreement cannot be enforced, as it would "chill" Ms. Lucas from pursuing her statutory rights under California's Fair Employment and Housing Act. It is true that arbitration agreements encompassing nonwaivable statutory rights, such as sexual harassment claims brought under the FEHA, are subjected to very exacting scrutiny. *See Armendariz*, 99 Cal.Rptr.2d 745, 6 P.3d at 680–82. However, this does not mean that they are unenforceable. Rather, the agreement must be scrutinized to ensure that it does not force the employee to waive his or her statutory right. *Id.* at 681. An agreement which provides the employee with a full and fair opportunity to litigate the statutory claim in an arbitral forum can be enforced. *Id.* Only those agreements that deprive the employee of his or her claim must be struck down.

 Ms. Lucas claims the provision is substantively unconscionable because it contains a provision awarding all costs and attorney's fees to the prevailing party.[8] *Armendariz v. Foundation Health Psychcare Services, Inc.* is the leading California case governing the substantive unconscionability of arbitration agreements.[9]

---

**6.** The Court notes that in the earlier case of *Harper v. Ultimo*, the California Court of Appeal reached a different conclusion on this issue, finding that by not specifying which version of the BBB rules controlled, the contract unfairly forced the customer signing it to sign on to a costly dispute over which version of the rules would apply. *See Harper*, 7 Cal.Rptr.3d at 422. However, there is no indication in that case that the BBB rules themselves specified which version would control, and thus it is distinguishable from the instant case.

**7.** Plaintiff's Opp. to Mot. to Compel at 8.

**8.** The agreement states in full:

ARBITRATION OF DISPUTE: Any existing or future dispute (a disagreement, controversy or claim that can be brought in Court or before any administrative agency by you against the company or any of the company's managers; or by the company against you) arising out of your employment of [sic] the termination of your employment, such as unlawful discrimination or harassment claims or enforcement of non-compete clauses, shall be resolved by final and binding arbitration between you and the company in accordance with the Employment Dispute Resolution Rules of the American Arbitration Association.

The arbitration shall take place at the offices of the American Arbitration Association nearest to the Company's corporate office, located in Middlesex County, State of New Jersey, and either the Company or the employee can enter judgment on the arbitration decisions in any Court having jurisdiction. The prevailing party shall be entitled to reasonable attorney fees and costs of arbitration.

**9.** *Armendariz* applies the general law of contracts, in keeping with the rule that only the general law of contracts, not rules specific to arbitration, shall apply in determining the

*Armendariz* lays out five factors to be considered in determining whether an arbitration agreement is enforceable in the employment context. The agreement must: 1) provide for a neutral arbitrator; 2) provide for more than minimal discovery; 3) require the arbitrator to issue a written decision; 4) provide for the same remedies that would otherwise be available to the employee in court; and 5) not require the employee to bear costs unique to arbitration. *Armendariz,* 99 Cal. Rptr.2d 745, 6 P.3d at 681–89. The costs and fees provision in Ms. Lucas's contract violates the fifth prong of *Armendariz.* Thus, the Court declines to enforce this particular provision.[10]

▮▮▮ Ms. Lucas next claims that the agreement is unconscionable and fails the *Armendariz* test because it fails to provide for the selection of a neutral arbitrator. The agreement provides that the arbitration shall be conducted in accordance with the AAA Employment Dispute Resolution Rules. Those rules provide that a "neutral arbitrator" shall be appointed who is "experienced in the field of employment law" and "[has] no personal or financial interest in the results of the proceeding and . . . no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias." AAA Employment Dispute Resolution Rule 12(b)(i)-(ii). The rules also provide that the parties can choose their arbitrator from a list, and can strike names to which they object. *Id.* at 12(c)(i)-(ii). It is clear from these provisions that the agreement, via the AAA rules, does provide for a neutral arbitrator, and thus the Court finds that this prong of *Armendariz* has been satisfied.

▮▮▮ Ms. Lucas also contends that neither the agreement itself nor the AAA rules provide for adequate discovery, but again, the AAA rules state otherwise. The AAA rules provide that the arbitrator "shall have the authority to order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration." The rules do not limit discovery other than to provide that only "necessary" discovery shall be conducted, but this is the same standard as applies in court: parties at trial cannot engage in unfettered discovery. *See* Fed.R.Civ.P. 26(b)(2) (stating several reasons why a court can limit discovery); *accord Miyasaki v. Real Mex Rests., Inc.,* 2006 U.S. Dist. LEXIS 62787 at \*18 (N.D.Cal. August 17, 2006) (limiting discovery to that the arbitrator considers "necessary" does not "obviously deprive [Plaintiff] of her ability to develop her case in arbitration").

▮▮▮ As for the *Armendariz* rule that requires the arbitrator to issue a written decision revealing the essential findings and conclusions on which the award is based, Ms. Lucas argues that the AAA rules don't meet this standard because the rules "only request an Award with reasons . . . not 'essential findings and conclusions.'" Plaintiff's Opp. to Mot. to Compel at 9 (ellipses in original). The AAA rules provide that the award "shall be in writing and shall be signed by a majority of the arbitrators and shall provide the written reasons for the award unless the parties agree otherwise." AAA Employment Dispute ·Resolution Rule 39(c). This Court fails to see how "written reasons" and "essential findings and conclusions" conflict. Accordingly, the Court finds that the

enforceability of arbitration agreements. *Adams III,* 279 F.3d at 892.

**10.** Defendants have stipulated that this provision is unenforceable and they will not seek to enforce it. *See* Def.'s Repl. in Supp. of Mot. to Compel at 5.

agreement comports with the written decision requirement of *Armendariz.*

Ms. Lucas next argues that the agreement is unconscionable because it provides that arbitration shall take place in New Jersey, which would impose a great financial burden on her because she resides in California. The Court agrees that this provision would impose too great a burden on Ms. Lucas and thus the Court also declines to enforce this provision. Furthermore, the provision conflicts with the FAA section 4, which provides that arbitration shall take place "within the district in which the petition for an order directing such arbitration is filed," 9 U.S.C. § 4, which in this case would be the Central District of California.

■■■ Just because the costs and fees provision and the New Jersey provision are unenforceable, however, does not mean that the arbitration agreement as a whole is substantively unconscionable and cannot be enforced. Ms. Lucas claims that "this Court does not have the power to take out the red pen to exclude provisions," [11] but once again this is a direct misstatement of the law. Unconscionable provisions may be severed from the agreement, allowing the remainder of the agreement to be enforced [12] so long as the entire agreement is not "permeated" with unconscionability. *Armendariz,* 99 Cal.Rptr.2d 745, 6 P.3d at 694–95; *Little v. Auto Stiegler,* 29 Cal.4th 1064, 130 Cal.Rptr.2d 892, 63 P.3d 979, 986 (2003).

■■■ Aside from the two provisions discussed above, nothing else in the agreement is patently unfair to the employee, and nothing suggests that the agreement was drafted with the purpose of depriving employees of the right to litigate their claims. The Court first notes that the agreement is mutual. Mutuality is a major factor in determining whether an agreement is "permeated" with unconscionability. *See Armendariz,* 99 Cal. Rptr.2d 745, 6 P.3d at 693–94 (agreements mandating that the employee arbitrate disputes against the employer but imposing no such requirements on the employer to arbitrate disputes against the employee are unconscionable). In this case the agreement is binding on both parties; it provides that "any existing or future dispute brought by [employee] against the company ... *or by the company against [employee]* " (emphasis added) must be arbitrated. Further, nothing in the agreement attempts to limit the legal remedies available to the employee. The agreement provides that the AAA Employment Dispute Resolution Rules shall govern the arbitration, rules which have been carefully drafted by the AAA to ensure they are fair to all parties. Once the two objectionable provisions have been severed, what the employee is left with is a perfectly fair and reasonable agreement to arbitrate. Accordingly, substantive unconscionability does not "permeate" this agreement as it contains only two objectionable provisions which are easily severable. The Court orders the above two provisions severed but finds that the remainder of the agreement is enforceable.

## II. Scope of the Agreement

The agreement at issue provides that "any existing or future dispute ... arising out of your employment [or] the termination of your employment, such as unlawful discrimination *or harassment claims* or

---

11. Plaintiff's Opp. to Mot. to Compel at 3.

12. Cal. Civ.Code § 1670.5(a) ("if a court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may ... enforce the remainder of the contract with the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result").

enforcement of non-compete clauses, shall be resolved by final and binding arbitration ..." (emphasis added). Thus, the agreement clearly covers sexual harassment claims such as the one at issue. Ms. Lucas claims that the agreement doesn't address harassment claims at all, but one look at the agreement itself proves her wrong: the agreement specifically mentions "harassment claims." She also claims that she signed a "sexual harassment policy" which was silent regarding arbitration, and that policy was "intended" to be the only agreement controlling harassment claims. However, she provides no evidence that either she or Gund "intended" that only the harassment policy should cover legal disputes or that its silence as to arbitration meant that harassment disputes should not be arbitrated. Thus, the Court finds that harassment claims are within the scope of the arbitration agreement.

Accordingly, the Court GRANTS the Defendants' Petition to compel arbitration, on the condition that the provisions in the arbitration agreement awarding costs and attorney's fees to the prevailing party and requiring the arbitration to take place in New Jersey are excised. This matter will be STAYED pending completion of arbitration.[13]

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve, by United States mail or by telefax or by email, copies of this Order on counsel for the parties in this matter.

---

13. 9 U.S.C. § 3 (If the Court deems this matter appropriate for arbitration, the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.").