Filed 8/19/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SCOTT DAVIS,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>STEFAN KOZAK et al.,<br><br>     Defendants and Appellants. | A156234<br><br>(Alameda County Super. Ct. No. RG18907104) |
| SCOTT DAVIS,<br><br>     Plaintiff and Respondent,<br><br>v.<br>RED BULL NORTH AMERICA, INC.,<br><br>     Defendant and Appellant. | A156238<br><br>(Alameda County Super. Ct. No. RG18916491) |

This consolidated appeal arises out of plaintiff Scott Davis's lawsuit against executives of Red Bull North America, Inc. (Red Bull) for age and sex harassment in violation of the Fair Employment and Housing Act (FEHA, Gov. Code § 12940) and related tort claims. Red Bull and its executives appeal from the trial court's orders denying their motions to compel arbitration of Davis's claims. We conclude that the arbitration agreement between Davis and Red Bull was unconscionable and unenforceable, and that

the trial court properly refused enforcement of the entire agreement. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2018, Davis filed a complaint against individual defendants Stefan Kozak, Ryan Conway, Edward Hayden, Christopher Trombetta, and Mark Russ for age and sex harassment and hostile work environment in violation of the FEHA, and for intentional and negligent infliction of emotional distress. Davis alleged he was 56 years old, had been employed by Red Bull for 15 years, and was in a mid-level managerial sales position from 2007 until he was wrongfully terminated in April 2018. In the first cause of action for harassment and hostile work environment based on age, Davis alleged that the individual defendants—all high-ranking executives within the company—consistently made derogatory comments and subjected Davis to harassing conduct related to his age, and passed him over for promotions and terminated his employment due to his age. In the second cause of action for harassment and hostile work environment based on sex, Davis alleged he was subjected to a hostile and abusive work environment because he witnessed the individual defendants and/or others sexually harassing and/or permitting sexual harassment of women in the workplace, and his complaints and assistance to others in making complaints about the hostile work environment led to further harassment against him. Davis's emotional distress claims derived from the same allegations of age and sex harassment.[1]

---

[1] The civil complaint attached a copy of Davis's administrative complaint with the Department of Fair Employment and Housing (DFEH) and the DFEH's right-to-sue letter issued to Davis in May 2018.

2

Shortly after Davis filed his complaint, Red Bull notified Davis of the company's decision to initiate arbitration and seek a declaration that the claims alleged in Davis's DFEH complaint were without merit. When Davis refused to submit to arbitration, Red Bull filed a demand for arbitration with the American Arbitration Association (AAA).

In July 2018, the individual defendants moved to compel Davis to submit his claims to arbitration.

Davis then filed a separate lawsuit against Red Bull seeking a declaratory judgment that the claims set forth in his DFEH complaint were not subject to the arbitration agreement and that the arbitration agreement was not binding on him. He further sought temporary and permanent injunctive relief staying Red Bull's arbitration until the final adjudication of his civil action against the individual defendants. In response, Red Bull filed its own motion to compel arbitration of Davis's claims.

### *The Arbitration Agreement*

In seeking arbitration of the dispute, appellants relied on the "Red Bull North America, Inc. Binding Arbitration Agreement" signed by Davis on September 29, 2003 (hereafter, the arbitration agreement or agreement).

The arbitration agreement is printed on Red Bull letterhead and consists of 18 paragraphs over three pages. It states in relevant part that Davis, "in consideration of [his] employment with [Red Bull]" agreed that "[a]ny and all disputes which involve or relate in any way to [his] employment (or termination of employment) with Red Bull, except for obligations under the Employee Confidentiality Agreement with Red Bull, shall be submitted to and resolved by final and binding arbitration."

The arbitration agreement further specifies it is "intended to cover all civil claims which involve or relate in any way to [Davis's] employment (or

3

termination of employment) with Red Bull, including, but not limited to, claims of employment discrimination or harassment on the basis of . . . sex, age, . . . claims based on violation of public policy or statue [sic], claims for wrongful discharge, [and] claims for emotional distress . . . ."

Under its procedures for initiating arbitration, the agreement provides that within 30 days of receipt of a notice of arbitration, "Red Bull and I will attempt to agree upon a mutually acceptable arbitrator. If Red Bull and I are unable to agree upon [an] arbitrator, we will submit the dispute to the [AAA]." The agreement further states that "arbitration shall be conducted in accordance with the laws of the state in which the arbitration is conducted and the rules and requirements of the arbitration service being utilized, specifically any rules applicable to employment disputes, to the extent that such rules and requirements do not conflict with the terms of this Agreement."

Regarding arbitral discovery, the agreement states: "Either party shall be entitled to conduct a limited amount of discovery prior to the arbitration hearing. Either party may take a maximum of two (2) depositions. Either party may apply to the arbitrator for further discovery. Such further discovery may, in the discretion of the arbitrator, be awarded upon a showing of sufficient cause."[2]

---

[2]     At paragraph 7, the arbitration agreement allows each party to make a written demand for "a list of witnesses, including experts, to be called and/or copies of documents to be introduced at the hearing." The demand must be served at least 40 days prior to the hearing, and the list and copies of documents must be delivered within 25 days of service of the demand. "Neither party may call any witness or introduce any document omitted from a response to such a demand."

***Hearing, Decision, and Appeal***

In a detailed tentative opinion, the trial court was prepared to grant appellants' motions to compel. After finding that appellants had met their burden of showing Davis was a party to a written agreement requiring him to submit the controversy alleged in his complaint to arbitration, the court determined that Davis had failed to show the agreement was unenforceable under principles of unconscionability, with the exception of the discovery limitation, which the court found to be severable. The court also found that the individual defendants had standing as nonsignatories to enforce the arbitration agreement under agency and estoppel principles.

After the hearing, however, the trial court reversed course. The court not only concluded the individual defendants could not enforce the arbitration agreement, but it also determined the agreement itself is unconscionable and unenforceable. On the latter point, the court found the agreement procedurally unconscionable because it involves an "added level of 'surprise' " by failing to specify which arbitration service would be utilized or which set of arbitration rules would apply to the arbitration. The court further found the agreement substantively unconscionable because (1) its language pertains only to the employee, not Red Bull, and therefore, the agreement to arbitrate is not mutual; (2) non-mutuality is further demonstrated by the "substantial 'carve-out' for the types of claims [Red Bull] would be likely to bring against Plaintiff" for disputes relating to obligations under the Employee Confidentiality Agreement; and (3) the arbitral discovery process is limited and does not guarantee adequate discovery for vindication of Davis's FEHA claims. The trial court denied both motions to compel.

5

Appellants timely appealed.  (Code Civ. Proc.,[3] § 1294, subd. (a).)

## DISCUSSION

"California law, like federal law, favors enforcement of valid arbitration agreements," allowing that they "may only be invalidated for the same reasons as other contracts." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97–98 (*Armendariz*).)  Generally applicable contract defenses such as unconscionability remain applicable to invalidate arbitration agreements.  (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*OTO*).)

The unconscionability doctrine has both procedural and substantive elements, "the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133 (*Sonic*).)  Both must be shown for the defense to be established, but not necessarily in the same degree.  (*OTO, supra*, 8 Cal.5th at p. 125.)  We evaluate unconscionability on a sliding scale, so that the more substantively one-sided the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable, and vice versa.  (*Id.* at pp. 125–126.)  "The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 912 (*Sanchez*).)  When unconscionability is shown, the trial court has discretion either to refuse to enforce the contract or to strike the unconscionable provision and enforce the remainder of the contract. (Civ. Code, § 1670.5, subd. (a); *Armendariz, supra*, 24 Cal.4th at p. 122.)

---

[3]    Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

6

"On appeal from the denial of a motion to compel arbitration, '[u]nconscionability findings are reviewed de novo if they are based on declarations that raise "no meaningful factual disputes." [Citation.] However, where an unconscionability determination "is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence." ' " (*Lhotka v. Geographic Expeditions, Inc.* (2010) 181 Cal.App.4th 816, 820–821 (*Lhotka*).)

The principal questions posed in this appeal are whether the arbitration agreement is unconscionable, and if so, whether the trial court should have severed the offending provisions rather than refuse enforcement of the agreement as a whole. An additional question is whether the trial court erred in finding that the individual defendants, as nonsignatories, lack standing to enforce the agreement. We address these questions in order, as resolution of the first two may obviate the need to reach the third.

A.    **Procedural Unconscionability**

"Procedural unconscionability focuses on ' " 'oppression' " ' or ' " 'surprise' " ' due to unequal bargaining power. [Citation.] 'Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice. Surprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them.' " (*Baxter v. Genworth North America* Corp. (2017) 16 Cal.App.5th 713, 722 (*Baxter*).)

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of

7

superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz, supra*, 24 Cal.4th at p. 113.) "Arbitration contracts imposed as a condition of employment are typically adhesive." (*OTO, supra*, 8 Cal.5th at p. 126.)

The arbitration agreement here is a form contract on Red Bull letterhead with spaces for the employee's name and signature. It states at the outset that Davis's agreement to its terms is "in consideration of" his employment with Red Bull. In his declaration in opposition to the motions to compel, Davis attested that the agreement was presented to him "as a condition of employment along with a stack of other documents, and on a 'take-it-or-leave-it' basis." He further attested on information and belief that the agreement "was provided to all employees and its terms were never altered based on a negotiation with an employee," and that he "had no opportunity to negotiate over the terms of this Agreement. Were I to attempt to do so, Red Bull likely would have ceased considering me for the position."

Though appellants are correct that Davis's declaration is speculative in some respects, the record sufficiently demonstrates that the arbitration agreement was presented as a standardized, non-negotiable term of Davis's employment. Appellants do not contend that Davis could have opted out of the arbitration agreement or negotiated his employment contract without one. (*Sanchez, supra*, 61 Cal.4th at p. 914; *Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 704 (*Serpa*).) Although appellants seize on Davis's acknowledgment that he did not actually attempt to negotiate the arbitration terms, a complaining party need not show it tried to negotiate standardized contract terms to establish procedural unconscionability. (*OTO, supra*, 8 Cal.5th at p. 127; *Carbajal v. CWPSC, Inc.* (2016) 245 Cal.App.4th 227, 244 (*Carbajal*).)

8

The record also sufficiently demonstrates the parties' unequal bargaining positions. There is no dispute that Red Bull was, at all relevant times, a large and prominent multinational corporation, a point reinforced by the declaration of Red Bull's human resources director describing the size and scope of Red Bull's business in the beverage industry. Davis, in comparison, was hired by the company in 2003 to a middle manager position. On this record, the unequal bargaining power between Red Bull and Davis was reasonably apparent from the parties' relationship. (*Carbajal*, *supra*, 245 Cal.App.4th at p. 244.) Indeed, "few employees are in a position to refuse a job because of an arbitration requirement." (*Armendariz*, *supra*, 24 Cal.4th at p. 115.) Furthermore, because Red Bull presented the arbitration agreement in the context of hiring Davis as a new employee, we must be "particularly attuned" to the danger of oppression and overreaching in this setting. (*OTO*, *supra*, 8 Cal.5th at p. 127.) Accordingly, we conclude Davis carried his burden to show the arbitration agreement was a contract of adhesion.

By itself, however, adhesion establishes only a "low" degree of procedural unconscionability. (*Serpa*, *supra*, 215 Cal.App.4th at p. 704.) Davis did not attempt to show other sharp practices on the part of Red Bull, such as lying, manipulating, or placing him under duress. (*Baltazar v. Forever 21* (2016) 62 Cal.4th 1237, 1245 (*Baltazar*).) And we disagree with Davis's characterization of the arbitration agreement as unreasonably prolix or complex. The agreement is set forth in a standalone three-page document, clearly labeled "Binding Arbitration Agreement," with standard-sized and readable text. With the exception of a few paragraphs, the agreement does not contain overly long or complicated sentences or use statutory references

9

and legal jargon.  (Cf. *OTO*, *supra*, 8 Cal.5th at p. 128 [sentences were "complex, filled with statutory references and legal jargon"].)

Nor do we find, as the trial court did, an element of surprise in the agreement's failure to identify a specific arbitration provider.  The agreement clearly spells out that the parties will attempt to mutually agree on an arbitrator, and if that fails, the parties will utilize the services of AAA.  Reasonably construed, the provision affords Davis the opportunity to negotiate for a preferred arbitrator, with AAA as the fallback if the parties cannot agree.  There is nothing surprising or hidden in this regard.

The trial court also found an element of surprise in the arbitration agreement's failure to identify the particular arbitral rules that would apply.  But the primary option under the agreement is for the parties to mutually agree upon an arbitrator, and for arbitration to be conducted in accordance with the provider's "rules applicable to employment disputes" to the extent they do not conflict with the agreement.  Consequently, the applicable rules could not be precisely identified at the time of contracting.

Appellants insist there is no potential for surprise because, in the event the parties could not agree on an arbitrator, then the "rules applicable to employment disputes" can only refer to the AAA Employment Arbitration Rules and Mediation Procedures, which are currently accessible on the AAA website.  Appellants emphasize that both the 2002 version (in effect when Davis was hired) and the 2009 current version of the AAA rules state that the rules applicable to a given dispute are those in effect "at the time the demand for arbitration . . . is received by the AAA."  Citing *Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 158 (*Evans*) and *Lucas v. Gund, Inc.* (C.D.Cal. 2006) 450 F.Supp.2d 1125, 1131–1132 (*Lucas*), appellants maintain that when an agreement does not specify which version of the

10

arbitral rules applies to a particular dispute but references rules that do, those rules control.  Davis counters that the agreement remains unclear because it does not identify which *version* of the rules would apply, and the current 2009 version of the AAA employment rules was not in effect at the time of contracting.

The precise question before us is not determining which version of the AAA rules applies, but whether the arbitration agreement's failure in the first place to identify the applicable version heightens the degree of procedural unconscionability.  (See *Carbajal*, *supra*, 245 Cal.App.4th at pp. 244–245 [oppression is increased when employer not only fails to provide rules "but also fails to clearly identify which rules will govern so the employee could locate and review them"].)  *Carbajal* distinguished both *Evans* and *Lucas* as cases relying on "similar provisions in other alternative dispute rules to resolve conflicts over which version of a particular set of rules applied, for example, the 2000 or the 2002 version of the same rules." (*Carbajal*, at p. 247.)  As *Carbajal* observed, "[n]either case was called upon to determine whether the underlying arbitration provision was procedurally unconscionable for failing to designate the governing rules."  (*Ibid*.)

That said, the full scope of *Carbajal*'s procedural unconscionability rationale is in question after the Supreme Court issued its decision in *Baltazar*, *supra*, 62 Cal.4th 1237, shortly after *Carbajal* was published.  (See *Nguyen v. Applied Medical Resources Corp.* (2016) 4 Cal.App.5th 232, 248– 249.)  In *Baltazar*, the Supreme Court held that the failure to provide a copy of the arbitral rules, standing alone, does not heighten the degree of procedural unconscionability.  *Baltazar* noted that in the cases where the failure to provide the arbitral rules supported a finding of procedural unconscionability, the "claim depended in some manner on the arbitration

11

rules in question. [Citations.] These cases thus stand for the proposition that courts will more closely scrutinize the substantive unconscionability of terms that were 'artfully hidden' by the simple expedient of incorporating them by reference rather than including them in or attaching them to the arbitration agreement." (*Baltazar*, at p. 1246.)

It logically follows from *Baltazar* that a viable claim of procedural unconscionability for failure to identify the particular version of the applicable arbitral rules—like a claim for failure to attach the rules themselves—depends in some manner on the substantive unfairness of a term or terms contained within the unidentified version of the rules applicable to the dispute. (See *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1470–1472 (*Peng*) [no heightened procedural unconscionability due to failure to attach arbitral rules or identify them with clarity].) That is, if the unidentified rules are not themselves substantively unfair, then the employer cannot be faulted for vaguely referring to such rules. Notably, Davis does not contend that either the 2002 or the 2009 version of the AAA employment rules contained substantively unconscionable terms.

Furthermore, to the extent *Carbajal* remains viable with regard to Davis's theory of procedural unconscionability, the case is factually distinguishable. In *Carbajal*, the plaintiff was asked to sign an arbitration agreement during her interview, and the employer's most knowledgeable person conceded that even he did not know which AAA rules applied under the arbitration provision. (*Carbajal*, *supra*, 245 Cal.App.4th at p. 244.) Davis does not similarly claim that he was given insufficient time to consider the arbitration agreement before signing it or that he was otherwise unable to access the AAA rules at the time of contracting.

12

In sum, we conclude Davis has not adequately shown a heightened degree of procedural unconscionability with regard to the agreement's non-identification of a specific arbitration provider or the version of the arbitral rules that would apply in a given dispute. Davis has, however, demonstrated a low degree of procedural unconscionability based on the agreement's adhesive nature. (*Serpa*, *supra*, 215 Cal.App.4th at p. 704.)

## B.  Substantive Unconscionability

In assessing substantive unconscionability, we look to the terms of the parties' agreement to "ensure[] that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as ' " 'overly harsh' " ' [citation], ' "unduly oppressive" ' [citation], ' "so one-sided as to 'shock the conscience' " ' [citation], or 'unfairly one-sided.' " (*Sonic*, *supra*, 57 Cal.4th at p. 1145.) These formulations "all mean the same thing." (*Sanchez*, *supra*, 61 Cal.4th at p. 911.) Substantive unconscionability " 'is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' " (*Ibid.*) "[T]he paramount consideration in assessing [substantive] conscionability is mutuality." (*Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.4th 638, 657 (*Abramson*).) "Agreements to arbitrate must contain at least ' "a modicum of bilaterality" ' to avoid unconscionability." (*Id.*, citing *Armendariz*, *supra*, 24 Cal.4th at p. 119.)

In making this determination, courts often look to whether the agreement meets a minimum level of fairness based on the factors set forth in *Armendariz*. (*Wherry v. Award, Inc.* (2011) 192 Cal.App.4th 1242, 1248.) Among these factors is the requirement that there must be discovery sufficient to adequately arbitrate a party's claims. (*Armendariz*, *supra*, 24 Cal.4th at pp. 102–106.)

13

### 1. *Discovery*

A limitation on discovery is an important way in which arbitration can provide a simplified and streamlined procedure for the resolution of disputes. (*Dotson v. Amgen* (2010) 181 Cal.App.4th 975, 983 (*Dotson*); *Armendariz, supra*, 24 Cal.4th at p. 106, fn. 11.)  At the same time, "[a]dequate discovery is indispensable for the vindication of statutory claims" (*Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 715), and "[t]he denial of adequate discovery in arbitration proceedings leads to the de facto frustration of" statutory rights (*Armendariz, supra*, 24 Cal.4th at p. 104).  In this context, "adequate" does not mean "unfettered." (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 184 (*Mercuro*).)  In striking the appropriate balance between the desired simplicity of limited discovery and an employee's statutory rights, courts assess the amount of default discovery permitted under the arbitration agreement, the standard for obtaining additional discovery, and whether the plaintiffs have demonstrated that the discovery limitations will prevent them from adequately arbitrating their statutory claims.  (*Poublon v. C.H. Robinson Co.* (9th Cir. 2017) 846 F.3d 1251, 1270 (*Poublon*).)

The arbitration agreement here permits each party to take a maximum of two depositions.  It contains no express provisions entitling the parties to propound interrogatories, requests for admission, or demands for production all relevant documents.[4]  Appellants emphasize that despite these limitations, the arbitrator retains the authority to order additional discovery

---

[4]     At oral argument, appellants suggested that paragraph 7 of the agreement provides for document discovery by permitting each party to make a written demand for documents.  (See *ante*, fn. 2.)  Paragraph 7 is not the equivalent of a discovery provision since, by its terms, the responding party is not required to produce documents that it does not intend to introduce at the arbitration hearing.

on a showing of "sufficient cause." According to appellants, this standard is equivalent to "good cause," which was approved by the courts in *Mercuro* and *Poublon*, and is "not different in substance from the standards approved in *Roman* [*v. Superior Court* (2009) 172 Cal.App.4th 1462 (*Roman*)] or *Dotson, supra.*" Appellants' reliance on these authorities is misplaced.

As this court previously observed in *Baxter*, the discovery provision in *Dotson* permitted additional discovery by the arbitrator on "a simple 'showing of need.'" (*Baxter, supra,* 16 Cal.App.5th at p. 729, citing *Dotson, supra,* 181 Cal.App.4th at pp. 978, 984.) *Baxter* agreed with *Dotson* that such a showing "did not impose an unreasonable limitation on the arbitrator's authority to increase discovery" and held that the "showing of need" standard was less onerous than a "good and sufficient cause" standard. (*Baxter* at p. 729.) And as relevant here, the arbitration clause in *Dotson* explicitly permitted more discovery than the agreement before us. (*Dotson, supra,* 181 Cal.App.4th at p. 982 [parties allowed at least two depositions (of an individual and any expert) and also to make document demands to any party in arbitration].)

*Roman* also involved a substantively different standard for discovery. There, the arbitration agreement incorporated the 1997 AAA rules, which stated the arbitrator had authority to order "such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of arbitration."[5] (*Roman, supra,* 172 Cal.App.4th at p. 1475.) But rather than adopting AAA discovery procedures, Red Bull's arbitration agreement provides instead for default discovery that makes no mention of written discovery or document

---

[5] The current version of the AAA employment rules contains the same discovery provision.

15

production, that limits depositions to two per party, and that uses a less-defined "sufficient cause" standard for obtaining additional discovery.

And even assuming the "sufficient cause" standard here is equivalent to the "good cause" standard approved in *Mercuro* and *Poublon*, both *Mercuro* and *Poublon* emphasized that the plaintiffs before them had made no showing whatsoever of an inability to vindicate their statutory rights under the discovery standards provided in the subject arbitration agreements. (*Mercuro*, *supra*, 96 Cal.App.4th at p. 183; *Poublon*, *supra*, 846 F.3d at p. 1271; cf. *Ontiveros v. DHL Express (USA), Inc.* (2008) 164 Cal.App.4th 494, 513 [employee estimated need to take at least 15 to 20 depositions].)

Here, in contrast, the record amply supports Davis's contention that he would be unable to vindicate his statutory rights under the discovery limitations of the arbitration agreement. Davis had a 15-year work history with Red Bull, and he offered facts tending to show that the alleged age and sex harassment "dramatically increas[ed]" since 2010 and continued until his termination in 2018. At the root of Davis's complaint is the theory that Red Bull executives promoted a risky youth-centered culture that glorified partying and substance abuse and looked the other way at reports of sexual harassment and battery. As a result, Davis claims, he was often subjected to ageist slurs directed at him in the presence of multiple witnesses, and was harassed by having to witness the sexual harassment and abuse of multiple women, including Red Bull employees. Davis's claims are also based on retaliatory harassment resulting from his reports of harassment of himself and others and his participation in formal investigations of these reports. Finally, he claims that he and other similarly-situated older employees were passed up for promotions despite their superior qualifications, and that he was terminated because of his age. Relevant documents would include, at

16

minimum, those relating to Davis's work performance, discipline and termination, the reports of age and sex harassment by Davis and others, and the company's internal investigations. In short, Davis has demonstrated that he has a factually complex case involving numerous percipient witnesses, executives, and investigators[6] and that the arbitration agreement's default limitations on discovery are almost certainly inadequate to permit his fair pursuit of these claims. (See *Armendariz*, *supra*, 24 Cal.4th at p. 104 [denial of adequate discovery in arbitration leads to de facto frustration of statutory rights]; *Dougherty v. Roseville Heritage* Partners (2020) 47 Cal.App.5th 93, 106 (*Dougherty*) [discovery limitations permitting depositions only in exceptional cases and providing for no interrogatories or requests for admission "[ran] the risk of frustrating plaintiffs' statutory rights"].)

In so concluding, we take our cue from *Baxter*, *supra*, 16 Cal.App.5th 732, which reached a similar conclusion where an arbitral discovery process featured default limitations that inhibited the plaintiff's ability to fairly pursue her claims against a former employer for discrimination and retaliation in violation of the FEHA. (*Baxter*, at p. 729.) In *Baxter*, the

---

[6]     As a sample of the potential evidentiary scope of this case, the complaint alleges there were multiple witnesses to Russ's ageist slurs against Davis at Red Bull events and meetings. Davis also names a former Red Bull employee who was purportedly known to routinely sexually harass women at the company and was accused by a Red Bull employee of sexual assault/battery. Davis further names various supervisors to whom reports about sexual assault and battery were made. He also identifies several members of Red Bull's human resources department who investigated his and others' allegations of sex harassment, including human resources employees who purportedly made comments suggestive of pretextual and sham investigations. Finally, Davis names at least two similarly-situated individuals who purportedly experienced age bias at the company. Notably, appellants do not dispute the potential relevance of these anticipated witnesses and their testimony to Davis's claims.

17

plaintiff had a 12-year employment history with the defendant, and she made a factual showing that the outcome of her claims would depend upon several percipient witnesses, six of whom were identified by name in the complaint, and the relevant documents would include those relating to the defendant's family leave practices, evaluation policies, reorganization, prior complaints similar to the plaintiff's, communications concerning her discipline and termination, and the defendant's internal investigation. (*Baxter*, at pp. 728– 729.) The parties' arbitration agreement, however, contained the following default discovery limitations: the defendant's employees would receive documents from their personnel and medical files, and each party would be permitted to propound up to 10 interrogatories and five written requests for documents to the other party, and to depose two individuals for a total of no more than eight hours. (*Id.* at p. 727.) The arbitrator was authorized to order further discovery " 'for good and sufficient cause shown.' " (*Ibid.*)

As *Baxter* explained, the default discovery allowed under the foregoing provisions was "low," the burden placed on the plaintiff "to justify additional discovery is somewhat greater than a simple showing of need or good cause," and the plaintiff had "established as a factual matter that she will likely need to conduct at least three to five times the number of depositions allowed" under the default limitations. (*Baxter*, *supra*, 16 Cal.App.5th at p. 730.) Under the circumstances, *Baxter* determined that the default levels of discovery would be inadequate to vindicate the plaintiff's FEHA rights. (*Id.* at pp. 728–729 [distinguishing *Mercuro*]) and that it was "reasonable to conclude that her ability to prove her claims would be frustrated" (*id.* at p. 730).

In concluding the arbitral discovery limitations would frustrate the plaintiff's ability to prove her claims, *Baxter* made the observation—equally

18

relevant here—that "[e]mployment disputes are factually complex, and their outcomes 'are often determined by the testimony of multiple percipient witnesses, as well as written information about the disputed employment practice.' [Citation.] Seemingly neutral limitations on discovery in employment disputes may be nonmutual in effect. ' "This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses." ' " (*Baxter*, *supra*, 16 Cal.App.5th at p. 727.)[7]

We assume, as we must, that any selected arbitrator will operate in a reasonable manner in conformity with the law. (*Dotson*, *supra*, 181 Cal.App.4th at p. 984.) But under the circumstances presented here, it is reasonable to conclude that the particular terms of the arbitration agreement appear to constrain an arbitrator's efforts to expand discovery to the extent necessary to vindicate Davis's statutory rights. (See *Baxter*, *supra*, 16 Cal.App.5th at p. 730; *Dougherty*, *supra*, 47 Cal.App.5th at p. 106.)

---

[7] After the conclusion of briefing, appellants filed a notice of new authority citing *Torrecillas v. Fitness Internat., LLC* (2020) 52 Cal.App.5th 485 (*Torrecillas*). There, the appellate court held that *Baxter* required an evidentiary showing, not merely argument, that arbitral discovery would be inadequate. (*Torrecillas*, at p. 497.) On the contrary, in *Baxter*, the factual complexity of the plaintiff's case was established by the complaint, which named at least six percipient witnesses that would have to be deposed. (*Baxter*, *supra*, 16 Cal.App.5th at pp. 727–728.) Likewise, the factual complexity of Davis's matter is established by facts appearing on the face of his complaint, and appellants do not contend that these witnesses are not relevant or necessary to establishing his claims. Furthermore, *Torrecillas* is materially distinguishable by the amount of default arbitral discovery available in that case. (*Torrecillas*, at p. 497 [requiring initial production of relevant documents and allowing five depositions, 30 interrogatories, and requests for documents used to support interrogatory responses].)

Accordingly, we agree with the trial court that the discovery limitations in the subject arbitration agreement are substantively unconscionable.

### 2. *Mutuality*

We next review the arbitration agreement for "the paramount consideration" of mutuality. (*Abramson, supra,* 115 Cal.App.4th at p. 657.) Courts have found a lack of sufficient mutuality where the agreement exempts from arbitration the types of claims an employer is likely to bring against an employee. (*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 634–635 [excluding employer's "most likely claims" to enforce anticompetitive covenants and confidentiality provisions while employee "was required to relinquish her access to the courts for all of her nonstatutory claims"]; *Stirlen v. Supercuts* (1997) 51 Cal.App.4th 1519, 1536–1542 (*Stirlen*) [excluding claims pertaining to patent infringement and improper use of confidential information and competition].)

We initially reject Davis's broad contention that the entire arbitration agreement lacks mutuality because of the repeated phrasing "I agree" and the absence of a signature line for Red Bull. (*Roman, supra,* 172 Cal.App.4th at p. 1466 [use of "I agree" language in arbitration clause that expressly covers "all disputes" creates mutual agreement to arbitrate].) That the agreement was drafted on Red Bull letterhead is an indication the company intended to be bound by the agreement. (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176–177; *Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 398.) Furthermore, the agreement specifically discusses what "Red Bull or I" must do in order to "initiate" arbitration. As a whole, the agreement is thus reasonably construed as both parties consenting to arbitration of any disputes either party brings involving or relating to Davis's

employment, with the one notable exception discussed below. (*Bigler v. Harker School* (2013) 213 Cal.App.4th 727, 737–738.)

The sole exception to arbitration under the agreement is for disputes that involve "obligations under the Employee Confidentiality Agreement with Red Bull."[8] Appellants contend this provision is mutual because Davis can sue in court for any claims he has against Red Bull relating to inventions or intellectual property belonging solely to him. We disagree, as such disputes would not involve any "obligations" under the Employee Confidentiality Agreement.[9]

The opening recitals of the Employee Confidentiality Agreement make clear its provisions protect only "Confidential Information," which is specifically defined as the "proprietary and confidential information *relating*

---

[8] We note here that under the arbitration agreement, Davis does not waive the right to file claims or complaints with administrative agencies such as the United States Equal Opportunity Commission. But in assessing mutuality, the relevant concern is whether the agreement allows the stronger party to file civil actions.

[9] Appellants contend it is improper to consider the language of the Employee Confidentiality Agreement in interpreting the scope of the arbitration agreement. The law is otherwise. (See *Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 54 [arbitration agreement may expressly incorporate by reference another document]; Civ. Code, § 1642 [several contracts relating to same matters between same parties and made as parts of substantially one transaction are to be taken together].) Appellants' reliance on *Lara v. Onsite Health, Inc.* (N.D. Cal. 2012) 896 F.Supp.2d 831 is unavailing because the arbitration agreement there did not expressly incorporate by reference, let alone expressly exempt from arbitration disputes relating to, the separate proprietary information agreement. (*Id.* at p. 842.) So is their reliance on *Bruni v. Didion* (2008) 160 Cal.App.4th 1272 and *Cotchett, Pitre & McCarthy v. Universal Paragon Corp.* (2010) 187 Cal.App.4th 1405. Those decisions simply stand for the general proposition that if the court concludes the arbitration clause is not unconscionable, it must compel arbitration and leave it to up to the arbitrator to determine whether the contract as a whole is unconscionable.

*to, owned by and regularly used by the Company*, or its parent and other affiliated companies, including but not limited to financial information, proprietary information relating to formulas, developmental or experimental work, trade secrets, techniques, know-how, discoveries, inventions, marketing information including statistical analyses, pricing structures, business strategies, plans for market expansion, information regarding customers, supplies and distributors, address/contacts lists (collectively, Confidential Information)." (Italics added.) The employee then agrees to "maintain the confidentiality of all Confidential Information" as so defined. There is no corresponding obligation of the company relating to any proprietary information of the employee. The agreement's section on remedies states: "In the event of a breach or threatened breach of this Agreement *by the Employee*, the Company shall be entitled to all remedies available at law and equity, including injunctive relief and recovery from *the Employee*." (Emphasis added.) Elsewhere, the Employee Confidentiality Agreement requires employees to assign to Red Bull any work product they develop during their employment, but in delineating the scope of this assignment, states "this Agreement *shall not apply* to any invention the Employee develops entirely on his/her own time without the use of the Company's equipment, supplies, facilities or trade secrets" unless the invention relates to the company's business or to the employee's work for the company. (Emphasis added.)

In short, the Employee Confidentiality Agreement only obligates Red Bull's employees to protect the company's confidential and proprietary information, not vice versa. The confidentiality agreement expressly states it "shall not apply"—and identifies no obligations on the company's part—with regard to any inventions or information belonging solely to its employees.

22

Accordingly, the exemption from arbitration for disputes involving "obligations under the Employee Confidentiality Agreement" lacks mutuality in two ways. First, any theoretical claim that Davis may have against Red Bull for wrongfully using his inventions or intellectual property is not a dispute involving the breach of any "obligations" under the confidentiality agreement and would therefore fall within the scope of the parties' arbitration agreement. Second, and in a broader sense, the arbitration agreement effectively exempts from arbitration the types of claims Red Bull is most likely to bring against an employee such as Davis. (*Carlson v. Home Team Pest Defense, Inc.*, *supra*, 239 Cal.App.4th at pp. 634–635; *Stirlen*, *supra*, 51 Cal.App.4th at pp. 1536–1542.)

Substantive unconscionability "turns not only on a 'one-sided' result, but also on an absence of 'justification' for it." (*Stirlen*, *supra*, 51 Cal.App.4th at p. 1532.) As our Supreme Court has recognized, a contract can provide a " 'margin of safety' that provides the party with superior bargaining strength a type of extra protection for which it has a legitimate commercial need without being unconscionable." (*Baltazar*, *supra*, 62 Cal.4th at p. 1250.) Red Bull, however, makes no attempt to justify the differential treatment created by the carve-out provision for disputes arising out of the Employee Confidential Agreement. Indeed, the record includes a revised Red Bull arbitration agreement that, while not applicable here, no longer contains an exemption for such disputes.[10]

To recap, we are presented here with only a minimal showing of procedural unconscionability based on adhesion. Accordingly, a "high" degree of substantive unconscionability is required to find the agreement

---

[10] Appellants do not dispute Davis's attestation that he was never presented with and did not sign this revised agreement.

23

unenforceable (*Peng*, *supra*, 219 Cal.App.4th at p. 1470), and we conclude that threshold is met. Due to the carve-out provision for the Employee Confidentiality Agreement, the "paramount" concern of mutuality (*Abramson*, *supra*, 115 Cal.App.4th at p. 650) is lacking, and Red Bull, as the party with superior bargaining strength, fails to articulate any legitimate business reason for the exemption. When considered in combination with the discovery limitations discussed in part B.1., *ante*, the carve-out provision allows Red Bull to litigate the types of claims it would most likely bring against employees in civil court with the full panoply of discovery at its disposal, while employees like Davis have no choice but to arbitrate even the most factually complex statutory claims subject to a discovery process that is far more restrictive and does not impact Red Bull in the same way for company-initiated claims. On this record, we conclude Davis has a made a sufficiently strong combined showing of procedural and substantive unconscionability to render the arbitration agreement unenforceable.

## C. Severance

The decision to sever rests in the trial court's discretion and is reviewed for abuse of discretion. (*Armendariz*, *supra*, 24 Cal.4th at pp. 121–125; *Lhotka*, *supra*, 181 Cal.App.4th at p. 821.)

In *Armendariz*, the Supreme Court held that Civil Code section 1670.5, subdivision (a), authorizes a court to refuse enforcement of a contract that is "permeated" by unconscionability. (*Armendariz*, *supra*, 24 Cal.4th at pp. 121–122.) In declining to enforce the subject arbitration agreement due to its "unlawful damages provision and an unconscionably unilateral arbitration clause," *Armendariz* observed that these "multiple defects indicate a systematic effort to impose arbitration on an employee not simply

as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Id.* at p. 124.)

As explained in parts B.1. and B.2., *ante*, the arbitration agreement here suffers from multiple defects that work to Red Bull's distinct advantage, namely, a restrictive arbitral discovery process that appears inadequate to protect vindication of Davis's statutory rights, plus an unjustified, non-mutual provision that exempts Red Bull's most likely claims against employees from arbitration and allows it to pursue such claims in court with full discovery, trial, and appeal rights. Because these unconscionable provisions together indicate Red Bull's self-interested effort to impose an inferior forum on its employees, the trial court was within its discretion to conclude the agreement was permeated by unconscionability and should not be enforced.

Because the trial court did not explicitly address severance in its final orders, Red Bull contends that the court completely failed to exercise its discretion with regard to severance, and that this by itself requires reversal. This contention is belied by the record. There is nothing in the record indicating the trial court disregarded the parties' briefing of the severance issue, and the court's awareness of its discretion is demonstrated by its initial ruling tentatively ordering severance, which the court evidently abandoned when finalizing its orders denying appellants' motions to compel.[11]

---

[11] Having concluded that the arbitration agreement is unconscionable and unenforceable in its entirety, we need not address whether the individual defendants have standing to enforce it. We therefore deny Red Bull's request for judicial notice of a new complaint filed by Davis against Red Bull during the pendency of this appeal, as its relevance pertains solely to this moot issue.

25

**DISPOSITION**

The orders denying the motions to compel are affirmed. Davis is entitled to his costs on appeal.

_____

FUJISAKI, J.

We concur.


_____

SIGGINS, P.J.


_____

JACKSON, J.


(A156234)

Superior Court of Alameda County

Robert D. McGuiness, Judge.

Mitchell Silberberg & Knupp, Adam Levin, Stephen A. Rossi, and Elana Moses; for Defendants and Appellants.

Peretz & Associates, Yosef Peretz, and Ruth L. Israely for Plaintiff and Respondent.